442 So.2d 820 (1983)
SALLY BEAUTY COMPANY
v.
Lester BARNEY and Elnora Barney.
No. CA-0875.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1983.
B. Franklin Martin, III, Ellis B. Murov, McGlinchey, Stafford, Mintz & Cellini, New Orleans, for plaintiff-appellant.
Bruce C. Waltzer, Thomas M. Derose, New Orleans, for defendants-appellees.
Before SCHOTT, BARRY and LOBRANO, JJ.
BARRY, Judge.
Plaintiff, Sally Beauty Company, appeals a partial summary judgment which dismissed four causes of action relative to an alleged noncompete agreement.
Sally sells and distributes professional beauty care products on a wholesale and retail basis in eight states. Defendant, Lester Barney, was employed by Sally since 1970 as the manager of one of its stores. Up to October, 1981 Sally's store managers were paid a salary and other benefits plus bonuses according to unwritten company policies based primarily upon sales in excess of quotas for certain time *821 periods. Sally alleges that due to substantial sums expended on special training for store managers, the Company determined that bonuses would only be paid to store managers who would agree not to compete. On October 1, 1981 Sally sent to all managers a "Bonus PlanFiscal 1982" which set out guidelines to calculate bonuses and included a "non-competition agreement." It is undisputed that Barney did not sign this document. On January 15, 1982 Sally issued an "Amendment to Bonus Plan-Fiscal 1982" which provided for partial bonuses in addition to full bonuses; however, it did not contain nor make reference to a noncompete agreement. Barney signed the Amended Plan on January 22, 1982. Sally paid Barney $12,925.08 in bonuses between October 1, 1981 and December 2, 1982 when Barney resigned.
In 1979 Barney and his wife opened a retail store ("Barney's Store") approximately one block from the Sally outlet which Barney managed. Until September 1982 Barney's Store sold products manufactured or distributed by the Shackley chain; thereafter, Mrs. Barney[1] purchased Sally products at her usual beautician's discount and offered them for sale at Barney's Store. On December 2, 1982 two Sally officials told Barney to close Barney's Store because it was in direct competition with the Sally outlet. Barney refused and resigned from Sally that same day.
The demands in Sally's lawsuit which were dismissed by partial summary judgment involve:
Specific performance of the noncompete agreement by enjoining Lester and Elnora Barney from selling professional beauty care products within 200 miles for two years;
$10,000 in liquidated damages;
Return of bonuses premised on the noncompete agreement and
Return of bonuses based on unjust enrichment.
The District Judge ruled:
Attached to plaintiff's petition are two documents, of which one is an unsigned non-competition agreement and the other a signed amendment to a bonus agreement. The plaintiff claims that the signature on the bonus agreement, as amended and which is attached to the unsigned competition agreement, amounts to a signature on the non-competition agreement.
The Court disagrees with the plaintiff's position, and therefore grants a partial summary judgment as to the first four causes of action of plaintiff's petition.
Plaintiff argues the following material facts are in dispute to circumvent the partial summary judgment:
Did Barney agree not to compete with Sally?
Did Sally spend substantial sums of money for special training of Barney?
Were bonuses paid to Barney based on the non-compete agreement?
Was Barney unjustly enriched?
The first three pages of the original Bonus Plan set forth a detailed schedule by which a store manager could earn bonuses. The third page also enumerated company policies which, if violated, would reduce bonuses. The last two lines of the Bonus Plan are on the fourth page. Up to this point there is no mention of a noncompete covenant. Thereafter the words "NONCOMPETITION AGREEMENT" are centered in bold type. There are no words which link or connect the Bonus Plan to the noncompete agreement, such as "The above Bonus Plan is contingent upon acceptance of the following." The form and style of the noncompetition agreement are in sharp contrast to the Bonus Plan. In particular, where the Bonus Plan is in ordinary prose interspersed with examples, the agreement uses formal, legal terminology and has blank lines with Lester Barney's name inserted. The agreement is on three *822 pages followed by a signature and date line.
We find no expressed or implied connection between the Bonus Plan and the noncompete agreement. On their face each is a separate entity. The signature line appears to relate only to the noncompete agreement. Nothing suggests that bonuses would be contingent on the agreement not to compete.
Sally argues the Amended Bonus Plan incorporated the original Bonus Plan and the Amended Plan is meaningless without reference to the original. Sally urges that a document which references or refers to another for its terms incorporates the terms as though they were inserted in the former. Action Finance Corporation v. Nichols, 180 So.2d 81 (La.App. 2d Cir.1965). Sally maintains it should be allowed to depose Barney to ascertain his intent when he signed the amended agreement. Sally claims that Barney impliedly agreed to the noncompete agreement by continuing to manage the Gentilly Store and accepting bonuses. LSA-C.C. Art. 1811.
Barney did sign the Amended Bonus Plan but that document also fails to mention the noncompete agreement. Barney claims and Sally denies that bonuses were paid before he signed the Amended Plan. Regardless, we find no nexus between the Bonus Plans and the agreement not to compete. Therefore, Barney's signature on the Amended Plan and his receipt of bonuses did not evidence an expressed or implied acquiescence of the restrictive covenant.
The other dismissed causes alternatively seek reimbursement of bonuses paid in 1982. Sally asserts the reason or principal cause to pay bonuses was its understanding that Barney agreed not to compete. Sally argues if the noncompete agreement was not in force, which was the primary reason to pay bonuses, then Sally is entitled to return of the bonus money. In the alternative, the retention of bonuses by Barney amounts to unjust enrichment.
We disagree. Since there was no agreement not to compete nor connexity between the Bonus Plan and/or Amended Plan and the compete covenant, it is untenable to conclude rejection of one eliminates the other. The only consideration for bonuses was the amount of sales.
Summary judgment is often inappropriate to show the intent of parties to a contract. Nettles v. Bowlin, 386 So.2d 658 (La.App. 1st Cir.1980), Hall v. Management Recruiters of New Orleans, Inc., 332 So.2d 509 (La.App. 4th Cir.1976), Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981). However, under these facts the intent is clear. There are no uncertainties that require the trial court to go beyond the evidence. See Dixie Campers, supra. Mere formal allegations without substance will not preclude the granting of summary judgment. "When the evidence submitted on the motion leaves no relevant, genuine issue of fact, and when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court, the motion for summary judgment should be granted." Acme Refrigeration of Baton Rouge, Inc. v. Caljoan, Inc., 346 So.2d 743, 748 (La.App. 1st Cir.1977). LSA-C.C.P. Art. 966, 967.
The district court judgment is affirmed at appellant's cost.
AFFIRMED.
SCHOTT, J., concurring for additional reasons.
SCHOTT, Judge, concurring for additional reasons:
I have signed and agree with the majority opinion in its entirety. In addition to the views expressed therein I believe appellant's position to be contrary to the law of this state emanating from LSA-R.S. 23:921 providing as follows:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such *823 contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years."
Appellant acknowledges that Barney never signed the non-competition agreement but contends that his signature on the amendment to the bonus plan constituted some sort of an implied intention to enter into the non-competition agreement which had been submitted to Barney and which he had declined to sign three months previously. Appellant also argues that Barney's continuing with his employment and accepting bonuses after the non-competition agreement was tendered to him constituted some sort of an implied acceptance of the contract.
In Louisiana non-competition agreements are disfavored and are deemed contrary to public policy, except under the particular circumstances outlined in R.S. 23:921. National Oil Service, etc. v. Brown, 381 So.2d 1269 (La.App. 4th Cir.1980). "In the absence of a covenant not to enter into a competitive business, fair competition of itself will not be restrained" and where there is such a contract, "it will be strictly construed." Desselle v. Petrossi, 207 So.2d 190 (La.App. 4th Cir.1968).
Appellant has not cited any Louisiana case, and I am not aware of any, where R.S. 23:921 was construed to authorize non-competition contracts not specifically signed by the employee. Surely, the wording of the statute strongly implies that any such contract must be in writing and must be signed by both parties. Strict construction does not favor an interpretation which would bind an employee to such a contract on some theory of implied acquiescence. If appellant wishes to take advantage of the benefits made available by R.S. 23:921, it was appellant's responsibility to insist on Barney's entering into the contract by signing it. Appellant's failure to take such action resulted in the contract's nullity and unenforceability.
NOTES
[1] Elnora Barney's affidavit states she has been a licensed beautician for many years and operated a beauty salon where she used and sold items purchased from the Sally store managed by her husband.