526 So.2d 1216 (1988)
Russell Dwayne BROWN, Respondent,
v.
Warren Jody TRAHAN, New Hampshire Insurance Company, Relator.
No. W87-1244.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Dauzat, Falgoust & Caviness, Peter F. Caviness, Opelousas, for defendant/applicant.
*1217 Andrus, Boudreaux, Lemoine & Tonore, Gregory F. Tonore, Lafayette, for plaintiff/respondent.
Before GUIDRY, DOUCET and KNOLL, JJ.
GUIDRY, Judge.
Plaintiff, Russell Dwayne Brown, filed this suit against Warren Jody Trahan (hereafter Jody) and his alleged liability insurer, New Hampshire Insurance Company (hereafter New Hampshire), seeking recovery of damages and medical expenses for injuries sustained when a pistol being held by Jody accidentally discharged striking Brown in his left knee. New Hampshire filed a motion for partial summary judgment seeking dismissal of plaintiff's demand against it, as the insurer of Jody, on the ground that Jody is not an insured for whom liability coverage is provided under the policy of insurance issued by it.[1] The trial court denied New Hampshire's motion and we granted certiorari in order to review the trial court's judgment.

FACTS
The following material facts gleaned from the pleadings, exhibits and depositions filed in support of New Hampshire's motion for summary judgment are without dispute.
Watson Champagne and his second wife, Mary, are Jody's step-father and natural mother. Watson Champagne and/or Mary own two wood frame houses in St. Landry Parish, Louisiana, which are located several miles apart, one located in the Lewisberg area with the address Route 1, Box 283-A, Church Point, Louisiana (hereafter Lewisberg house), and the other located in the Cankton area with the address Route 1, Box 184, Church Point, Louisiana (hereafter Cankton house). Watson Champagne and Mary have always resided in the Lewisberg house. They never resided or even stayed overnight in the Cankton house.
Jody lived with his step-father and mother in the Lewisberg house until he quit school and joined the work force at the age of fifteen or sixteen years. Approximately one year after Jody quit school, he moved out of the Lewisberg house, taking all of his personal belongings with him, and has not resided there since. Since that time, he has lived alone or shared apartments or rent houses with friends. Jody is now about twenty-four (24) years old. Watson and Mary Champagne have not supported Jody since he left their home at the age of 17 years nor, during such period, did Jody contribute anything to the support or management of the Lewisberg house.
Watson Champagne bought the Cankton house as an investment in September 1982. In November of that year, Jody moved into the Cankton house under a rental agreement providing for the payment to Watson Champagne of $100.00 monthly. When Jody moved into the Cankton house he brought his own furnishings and appliances and was provided nothing by the Champagnes. During the period while Jody was residing in the Cankton house, although he ate an occasional meal with his mother and step-father, he never stayed overnight at the Lewisberg house and was otherwise totally independent of that household, paying his own utility bills, cooking his own meals and washing his own clothes at the Cankton house.
Jody missed many rental payments during the period of his stay at the Cankton house, however, he was not evicted by his step-father nor did the latter seek to enforce payment of the delinquent rental payments. Several months following the Brown incident, Jody moved from the Cankton house at the request of his step-father and has not resided in either the Lewisberg or Cankton house since. Finally, Jody stated that following his departure from the Lewisberg house, about the year 1977, he never entertained any intent of residing again with his mother and step-father.
*1218 At the time of the Brown incident, there was in force and effect a policy of homeowner's insurance issued by New Hampshire to Watson Champagne, the named insured, which provided coverage for the Lewisberg house and also provided coverage for the "additional residence premises" located at Route 1, Box 184, Church Point, Louisiana (Cankton house). This policy with respect to liability coverage provides for payment, on behalf of the insured, "all sums which the insured shall become legally obligated to pay because of bodily injury or property damage ...". Under the "General Conditions" section, the term "Insured" is defined as follows:
"`Insured' means
(1) The Named Insured stated in the Declarations of this policy;
(2) If residents of the Named Insured's Household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any Insured; ..."
DOES THE NEW HAMPSHIRE POLICY PROVIDE LIABILITY COVERAGE FOR WARREN JODY TRAHAN?
In refusing New Hampshire the relief for which it prayed, the trial judge found that "there is a `legal' dispute of material fact" which precluded rendition of summary judgment. We find this was error.
Summary judgment is not to be used as a substitute for a trial on the merits. However, summary judgment should be rendered when the pleadings, depositions, affidavits, etc., reflect no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. As we stated in Simon v. Fasig-Tipton Company of New York et al., 524 So.2d 788 (La.App. 3rd Cir.1988):
"The purpose of this procedural tool is to cut through the meaningless and unsupported allegations, thus getting at the heart of the issues before a trial court and allowing an expedited judgment, if worthy of such."
The parties concede that the sole issue for review concerns whether Warren Jody Trahan was a resident of the same household as Mr. and Mrs. Watson Champagne, his mother and step-father, at the time of the Brown incident. If Warren was a member of that household, the New Hampshire policy provides liability coverage for his delictual acts since he is the natural son of Mary Champagne. On the other hand, if Warren is determined not to be a member of that household, the New Hampshire policy issued to Watson Champagne provides no coverage for his delictual acts. This issue presents a mixed question of fact and law, however, the facts material to a determination of that issue, which we have summarized above, are not in conflict or dispute. Therefore, the issue for review will be resolved by applying the law to the uncontested facts and therefore, consideration of this matter on a motion for summary judgment is proper.
The courts of this state are in general agreement that the phrase "resident of the same household", as used in insurance policies, has no precise meaning. In the recent case of Jenks v. State, 507 So.2d 877 (La. App. 4th Cir.1987), writ denied, the court, in considering the meaning of the phrase in the context of a child in foster care, summarized the principles applicable in construing such phrase stating:
"Whether the child was a resident of the Darden household is the crucial question. Resident has been found to have many definitions and meanings. Its construction depends on the context and the subject matter and `its meaning is to be determined from the facts and circumstances taken together in each particular case.' Bearden v. Rucker, 437 So.2d 1116, 1120 (La.1983), quoting Mathis v. Employers' Fire Insurance Company, 399 So.2d 273 (Ala.1981).
In Black's Law Dictionary (5th Ed. 1979) resident is defined as `a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration; it signifies one having a residence, or one who resides or abides.' Household is defined as `[a] family living together.... Those who dwell under the same roof and compose a family.'
*1219 Household embraces a collection of persons as a single group with one head living together under one roof. It is `a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.'" Hernandez v. Comco Insurance Company, 357 So.2d 1368, 1370-71 (La.App. 4th Cir.1978), writ denied 359 So.2d 1305 (La. 1978), quoting Leteff v. Maryland Casualty Company, 91 So.2d 123 (La.App. 1st Cir.1956). See also Mims v. State Farm Insurance Company, 478 So.2d 967 (La. App. 5th Cir.1985), writ denied 482 So.2d 630 (La.1986); Kemp v. State Farm Fire and Casualty Company, 442 So.2d 642 (La.App. 1st Cir.1983), writ denied 444 So.2d 1224 (La.1984).
In construing the phrase `resident of the same household' in the context of a legally separated wife, the Supreme Court stated the determination did not depend solely on whether the couple was living under the same roof. The court emphasized membership in a group rather than attachment to a building and noted it was a matter of intention and choice rather than location. Bearden v. Rucker, supra."
When we consider the particular facts of this case in light of the aforestated principles, we have little difficulty concluding that, at the time of accident, Warren Jody Trahan was not a resident of the household of Mr. and Mrs. Watson Champagne. Therefore, Warren Jody Trahan is not an insured under the policy of insurance issued by New Hampshire and the latter is entitled, as a matter of law, to the summary judgment for which it prayed.
Jody had not been a member of the Champagne household for a continuous, uninterrupted period of some seven years prior to the accident. He had no personal belongings at the Lewisberg house; had no key to the house; and, was not free to come and go therefrom as he pleased. He was certainly not a member of a group with one head living together under one roof. Nor can it be said that Jody and the Champagnes subsisted in common and directed their attention to a common object, the promotion of their mutual interests and social happiness. Most importantly, it was obviously the intention and choice of Jody and the Champagnes that, following his departure from the Lewisberg house seven years earlier, Jody was on his own, supported himself, did not reside with the Champagnes and had no intention of ever doing so again.
Respondent argues that the following circumstances bear upon and at least raise an issue of material fact concerning the status of Warren Jody Trahan as a resident and member of the Champagne household: (1) the Cankton house, along with the Lewisberg house, is insured for purposes of liability under the New Hampshire policy; and, (2) Watson Champagne did not evict Jody or take other legal action against him when he became delinquent in his rental payments for the Cankton house. We find no merit in this contention.
We fail to see how the forebearance of Watson Champagne to take legal action against his step-son bears upon the issue of Jody's status as a member of the Champagne household. To argue that Mr. Champagne's forebearance somehow reflects or corroborates the fact that Jody is a member of the Champagne household is absurd. The obvious reason for Mr. Champagne's forebearance is the fact that he was married to and living with Jody's natural mother. Additionally, the fact that the Cankton house was insured under the policy of insurance issued by New Hampshire has no bearing on the status of Jody as a member of the Champagne household nor does that fact and the fact that he rented and resided in that house operate to automatically classify Jody as an insured under the policy. Similar contentions were rejected in Hernandez v. Comco Insurance Company, 357 So.2d 1368 (La.App. 4th Cir. 1978), writ refused, 359 So.2d 1305 (La. 1978), and Buxton v. Allstate Insurance Company, 434 So.2d 605 (La.App. 3rd Cir. 1983).
In sum, we conclude that there is no genuine issue of fact material to a finding *1220 that, at the time of the accident sued on, Warren Jody Trahan was not a member of the household of Mr. and Mrs. Watson Champagne and therefore, he is not an insured under the policy of insurance issued by New Hampshire Insurance Company to Watson J. Champagne. For these reasons, the writ of certiorari heretofore granted is made peremptory and it is ordered that the judgment of the trial court dated October 27, 1987, denying the motion for partial summary judgment filed by New Hampshire Insurance Company is reversed and set aside and same is hereby granted. Accordingly, it is ordered, adjudged and decreed that plaintiff's suit against New Hampshire Insurance Company, as the insurer of Warren Jody Trahan, be and the same is ordered dismissed, with prejudice. Costs in this court are assessed to respondent, Russell Dwayne Brown. Costs at the trial level are to await a final determination of this matter.
WRIT GRANTED AND MADE PEREMPTORY.
NOTES
[1] Although the record is not entirely clear on this point, presumably New Hampshire agrees that it is not entitled to summary judgment on the coverage issue insofar as concerns plaintiff's entitlement to medical payments coverage under the New Hampshire policy.