11WOODARD, Judge.
Suit was brought on behalf of a minor child for a dog bite injury. The owner of the dog, Troy Drouin, lived in a rental home owned by his father, Roy Drouin. This incident took place at the plaintiffs’ residence, approximately one-half block from Troy Drouin’s residence. Both the dog’s owner and his father, the insured homeowner, were dismissed from the suit. Plaintiffs then proceeded solely against the homeowner’s insurance provider. Following trial, the jury returned a verdict in favor of the plaintiffs, finding that the insurance policy provided coverage for the incident and awarding damages in excess of the policy’s limits. The insurance provider appeals the trial court’s judgment. We reverse.
FACTS
On September 17, 1993, at approximately 10:00 a.m., Dylan Palermo, then seventeen months of age, was playing in the doorway of his apartment at the |2Plantation Apartment Complex in Bunkie. Dylan’s mother, Monica, was inside the apartment. Suddenly, Ms. Palermo heard a loud bark, and when she turned around, she saw a large blaek dog preying on her son who was lying on the ground. Ms. Palermo kicked the dog in an attempt to get it away from her son. She had to kick the dog several times before the dog finally released the child and left the premises. Ms. Palermo ran inside her apartment to get a towel to cover her child’s head which was bleeding profusely. Dylan was lying limp in Ms. Palermo’s arms. She frantically called her mother, who was working nearby, to take them to the hospital.
The three of them arrived at the hospital at approximately 10:10 a.m. After conducting tests, medical personnel suggested that Dylan be taken to Ville Platte as he was going to require intricate plastic surgery to repair the injury to his head. The child and mother were taken to Ville Platte by ambulance at approximately 1:00 p.m. Upon arrival, Dylan was taken into surgery for approximately two hours. Eighty-two stitches were needed to close Dylan’s head as well as other stitches to his face. Dylan was released from the hospital the following day. No pain medication was prescribed due to the seriousness of the head injury.
The dog that attacked young Dylan was a rottweiler named “Jake the Snake” and was owned by Troy Drouin. Troy lived at 511 Pershing Highway, with his wife, child, and “Jake,” approximately one-half block from Ms. Palermo’s apartment. Troy’s father, Roy, owned the dwelling which Troy rented from him. Roy Drouin did not reside at 511 Pershing Highway but in another home ap *591 proximately one mile away. Roy Drouin had purchased homeowners’ or renters’ liability insurance from the New Hampshire Insurance Company to cover himself and his insureds at his primary residence at Eola Road and at the 511 Pershing Highway location. Troy Drouin has never purchased homeowners’ insurance in his own name for the 511 Pershing Highway dwelling. These facts are not in dispute.
PROCEDURAL HISTORY
The plaintiffs filed suit against Roy . Drouin, Troy Drouin and New Hampshire Insurance Company, Roy’s homeowners’ insurance provider. The matter was first brought before this court on appeal from the trial court’s granting of summary judgment in favor of Roy Drouin. The court of appeal held there was no question of |3fact regarding the ownership of the dog and upheld the granting of summary judgment. Subsequently, Roy Drouin was dismissed from the lawsuit.
When the ease proceeded to trial against the two remaining parties, Troy Drouin was dismissed following a stipulation that he was the dog’s owner and that he did reside at 511 Pershing Highway at the time of the incident. Thereafter, the claim advanced to trial only against New Hampshire Insurance Company.
On March 6, 1996, plaintiffs filed a rule to show cause, urging that the issue of coverage was a question of law which should be determined by the trial judge. The trial judge agreed and held, as a matter of law, that coverage did exist. New Hampshire applied for emergency writs to this Court. This Court ruled that the trial court erred in ruling on the issue of coverage, finding that, pursuant to La.Code Civ.P. art. 1562(D), the defendants had not consented to a separate trial on that issue.
Thereafter, the jury returned a verdict on whether New Hampshire provided liability coverage for the incident and damages. They found in favor of the plaintiffs, finding coverage to exist and awarding damages in the amount of $250,000 to Dylan and $25,000 to Ms. Palermo.
ASSIGNMENTS OF ERROR
The defendant-appellant claims the following assignments of error:
1. The' judge and jury were both clearly wrong to conclude that the policy of insurance issued by New Hampshire Insurance Company provided coverage for the damages claimed in this case, when the homeowner’s policy was issued to Roy J. Drouin, who is not at fault; when the policy clearly indicated ‘insured’ means ‘you and residents of your household who are your relatives’ as Troy Drouin, the owner of the dog, is neither a resident of Roy Drouin’s household or an insured such that the faults of Troy Drouin, including his liability for his dog, are not covered by the insuring agreement issued by New Hampshire Insurance Company.
2. The honorable trial court erred in failing to properly instruct the jury on the law applicable to the case.
3. The honorable trial court erred with the verdict form submitted to the jury.
44. The award of general damages was excessive and constituted an abuse of discretion.
5. Alternatively, New Hampshire Insurance Company’s policy is limited by the policy terms and conditions to $100,000 per occurrence for personal liability claims and the trial court erred to east New Hampshire Insurance Company in judgment for the full sum of $250,000 for the claim of Dylan Palermo and $25,000 for the claim of Monica Palermo.
LAW
Manifest Error
It is well settled that an appellate court may not set aside a trial court’s findings of fact in the absence of manifest error or unless they are clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). Based on this standard, the Louisiana Supreme Court has established a two-tier test for reversal on appellate review:
*592 (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Id. at 882. Even when an appellate court may feel that its own evaluations are more reasonable than the fact finder’s, reasonable determinations and inferences of fact should not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). These principles are based upon the trial court’s opportunity to evaluate live witnesses and upon the separate and distinct functions of the trial and appellate courts. Stobart, 617 So.2d 880.
Thus, an appellate court must do more than simply review the record for some evidence which supports or controverts the trial court’s findings; it must review the record in its entirety to determine whether the decision reached was manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987). Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly |5erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Law v. City of Eunice, 94-1312 (La.App. 3 Cir. 4/5/95); 653 So.2d 149.
Although the trial court is in a better position to evaluate and assess the credibility of witnesses, the overriding concern of the court of appeal is whether the fact finder’s credibility determinations are reasonable. Where documents or objective evidence so contradict the witness’ story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’ story, a court of appeal may find manifest error or clear wrongness in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d 840.
Assignment of Error Number 1
In its first assignment of error, the defendant insurer argues that the trial court erred in finding that Troy Drouin was an “insured” under the policy and that coverage existed for the dog bite in question. Our review of the law requires that we reverse the holding of the trial court.
In Reynolds v. Select Properties, Ltd., 93-1480, p. 3 (La.4/11/94); 634 So.2d 1180, 1183 (citations omitted) (emphasis added), the Louisiana Supreme Court stated:
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The parties’ intent, as reflected by the words of the policy, determine the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.
The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer’s obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more ^reasonable interpretations, the interpretation which favors coverage must be applied.
It is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.
See also Gunn v. Automotive Cas. Ins. Co., 614 So.2d 154 (La.App. 3 Cir.1993).
*593 It is undisputed that the homeowner’s insurance policy at issue in the present case was issued to Roy J. Drouin. His is the only name that appears in the policy. In addition, in clear and unambiguous language, the policy indicates who qualifies as an insured under the policy. The following definitions contained in the policy are relevant to our analysis:
3. “[I]nsured” means you and residents of your household who are:
a. your relatives; or
b. Other persons under the age of 21 and in the care of any person named above....
Although the term “household” is not defined in the policy itself, we do have guidance in our jurisprudence. In Brown v. Trahan, 526 So.2d 1216, 1218-19 (La.App. 3 Cir.1988), this court addressed the issue by stating the following:
The courts of this state are in general agreement that the phrase “resident of the same household”, [sic] as used in insurance policies, has no precise meaning. In the recent case of Jenks v. State, 507 So.2d 877 (La.App. 4th Cir.1987), writ denied, the court, ... considered] the meaning of the phrase ...:
“□Resident has been found to have many definitions and meanings. Its construction depends on the context and the subject matter and ‘its meaning is to be determined from the facts and circumstances taken together in each particular case.’ ” Bearden v. Rucker, 437 So.2d 1116, 1120 (La.1983), quoting Mathis v. Employers’ Fire Insurance Company, 399 So.2d 273 (Ala.1981).
In Black’s Law Dictionary (5th Ed.1979) resident is defined as “a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration; it signifies one having a residence, or one who resides or abides.” Household is defined as “[a] family ^living together_ Those who dwell under the same roof and compose a family.”
Household embraces a collection of persons as a single group with one head living together under one roof. It is “a ‘collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.’ ” Hernandez v. Comeo Insurance Company, 357 So.2d 1368, 1370-71 (La.App. 4th Cir.1978), writ denied 359 So.2d 1305 (La.1978), quoting Leteff v. Maryland Casualty Company, 91 So.2d 123 (La.App. 1st Cir.1956). See also Mims v. State Farm Insurance Company, 478 So.2d 967 (La.App. 5th Cir.1985), writ denied 482 So.2d 630 (La.1986); Kemp v. State Farm Fire and Casualty Company, 442 So.2d 642 (La.App. 1st Cir.1983), writ denied 444 So.2d 1224 (La.1984).
Similarly, the fourth circuit stated in Hernandez v. Comco Ins. Co., 357 So.2d 1368, 1371 (La.App. 4 Cir.), writ refused, 359 So.2d 1305 (La.1978): “The pattern which emerges from the myriad of decisions considering the term ‘household’ seems to be an emphasis on dwelling as a family under one head.”
It is this court’s view that, given the undisputed facts of this case, the sole issue that needs to be decided is whether Troy Drouin was a resident of the same household as Roy Drouin at the time of the dog bite incident. If Troy was a member of Roy’s household, then the policy would provide coverage because he is “a relative” of the insured. If we determine that Troy is not a member of Roy’s household, then the New Hampshire Insurance policy issued to Roy Drouin would provide no coverage for Troy’s acts.
Initially, it may appear that the issue of coverage is a mixed question of law and fact. However, the facts material to a determination of the issue are not in dispute. All of the lay witnesses, including Monica Palermo, testified that Roy and Troy have lived in separate households for many years. The police officer, Troy Redmon, also testified that he is familiar with the Drouins and the Palermos, and that Troy and Roy Drouin had lived apart for many years prior to the dog bite incident. Furthermore, in a joint stipulation, the parties agreed that Troy lived at the 511 Pershing Highway address and that the dog was owned by him. No facts were presented at trial which would indicate that Roy and Troy shared the same household, *594 that Roy lived at the 511 Pershing Highway residence, or that Troy was a resident of Roy’s household. In addition, in an earlier motion for summary judgment, it had Igbeen determined that Roy had never exercised control over the dog. Accordingly, our determination must be made by applying the law, as discussed above, to the undisputed facts, therefore presenting us with only a question of law. Applying the facts to the definitions of the term “household,” as previously recognized, and the unambiguous language of the insurance policy, coverage cannot be said to exist for the dog bite in question, as Troy and Roy Drouin lived in different “households.” Therefore, the jury’s determination was manifestly erroneous and clearly wrong when it found that coverage did exist. The facts do not present us with two reasonable interpretations from which the jury could choose. On the contrary, the facts are undisputed, and the law is clear.
In Cain v. Parent, 574 So.2d 497 (La.App. 3 Cir.1991), this court was confronted with the identical issues presented for review in the ease sub judice. In Cain, Eileen Parent was the owner of the premises in which her daughter, Tianne, resided. Although no written lease or formal agreement existed, it was determined that Tianne rented the premises from her mother. Tianne owned a dog, which while being walked by her brother, bit the plaintiff. Eileen had acquired a homeowner’s policy through Allstate for the residence and had maintained it after she had moved from the residence. In the definitions portion of the policy, the following definition of “insureds” was provided:
3. “Insured person” — means you and, if a resident of your household:
a) any relative; and
b) any dependent person in your care.
Cain, 574 at 499. We note that this language is practically identical to the definition of insured under the New Hampshire Insurance policy at issue in the case sub judice. Further, in Cain, it was undisputed that Eileen was not the owner of the dog and had no control over the animal. In reaching a determination, this court concluded that the facts as presented were clear: “Eileen Parent and her daughter, Tianne, maintained separate households, and each represented an independent family unit.” Id. In addition, this court determined that no coverage existed under the policy based on the jurisprudential definition of the term “household” and based upon the finding of a lack of ambiguity in the policy regarding the definition of “insureds.”
[9The plaintiffs hinge their argument on the fact that the policy itself was poorly drafted and did not specifically detail what type of coverage was provided for the various locations listed under the policy. To illustrate their contentions, the plaintiffs offered the deposition of Brenda Franks. Ms. Franks worked for the agent who wrote Roy Drouin’s policy. However, the policy had been written before she began her employment with the agent. Ms. Franks had no dealings with Roy Drouin regarding his homeowner’s policy. She further stated that she is not a claims’ adjustor, and therefore, it is not her duty to determine coverage or write policies. Furthermore, the issue before us is not what type of coverage was provided to each residence listed under the policy. The issue before us is whether Troy can be considered an insured under this policy. As to the issue of coverage regarding Troy’s liability, the policy’s language and our jurisprudence are crystal clear.
The facts of the case before us fall squarely within the holdings of this Court in Cain and Brown, cited above. Clearly, Troy and Roy Drouin maintained separate households and separate family units. Troy lived at the 511 Pershing Highway address with his wife and child. Roy Drouin lived on Eola Road with his wife. Troy was not a member of his father’s household and, therefore, cannot be considered an insured under the New Hampshire policy. Furthermore, we find no ambiguities in the policy, as the language defining the term “insured” has been found to be clear and unambiguous in recent jurisprudence. See Cain; Brown.
Lastly, the plaintiffs contend that because Roy Drouin called his agent to report the accident, he must have intended for coverage to include his son when he extended coverage to the 511 Pershing Highway address. However, for this Court to accept that argument as valid and reach a contrary holding, would *595 defeat the purposes of La.Civ.Code arts. 2045-2047 which recognize that if “the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties.” Lewis v. Hamilton, 94-2204, p. 3 (La.4/10/95); 652 So.2d 1327, 1329.
Finding this ruling to be dispositive of the case before us, we need not review the remaining assignments of error presented by the defendant.
hnCONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Monica and Dylan Palermo and against New Hampshire Insurance Company is reversed and set aside, as the jury’s determination was manifestly erroneous in that it was contrary to law and the evidence presented at trial. All costs of this action, both in the trial court and in this court of appeal, are assessed to the plaintiff-appellee, Monica Palermo.
REVERSED.