# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1421

**MICHAEL P. TYLER, ET AL**

**VERSUS**

**JOSEPH DEJEAN, ET AL**

\*\*\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## TWENTY-SEVENTH JUDICIAL DISTRICT COURT
## PARISH OF ST. LANDRY, NO. 09-C-3884
## HONORABLE ALONZO HARRIS, JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, Billy Howard Ezell, J. David Painter, and James T. Genovese, Judges.

Pickett, J., dissents and assigns written reasons.
Ezell, J., dissents for reasons assigned by Judge Pickett.

**AFFIRMED.**

Thomas R. Edwards
556 Jefferson St.
Lafayette, LA 70502
COUNSEL FOR PLAINTIFFS-APPELLEES:
    Michael Tyler and Ivory Thomas

Joshua J. Pitre
522 East Landry St.
Opelousas, LA 70570
COUNSEL FOR PLAINTIFF-APPELLEE:
    Felicia Guilbeau Rushing

Daniel R. Atkinson, Jr.
P.O. Box 83260
Baton Rouge, LA 70884
COUNSEL FOR DEFENDANTS-APPELLANTS:
    Peerless Indemnity Insurance Company and
    America First Insurance Company

**PAINTER, Judge.**

Defendants, Peerless Indemnity Company (Peerless) and America First Insurance Company (AFI), appeal the trial court's grant of Plaintiffs' motion for summary judgment and the denial of their motion for summary judgment, finding that Plaintiffs were insured under both the general liability portion of Defendants' policies and the uninsured/underinsured portions of the policies, and that the umbrella policy provides coverage. For the following reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

On October 9, 2008, a pickup truck belonging to Bellevue Memorial Park (Bellevue) and insured by Peerless and AFI, was parked on the western shoulder of the southbound lane of Louisiana Highway 182 in front of Bellevue. Three Bellevue employees, Michael Tyler, Ivory Thomas, and Adrian Rushing (the employees), were standing near the truck. Joseph Dejean was driving his van northbound on Highway 182. He lost control of his vehicle, crossed the southbound lane and the western shoulder of the highway, and went into a ditch hitting the three Bellevue employees. Rushing died at the scene of the accident. Tyler was thrown through the window of the Bellevue truck, and Thomas was thrown down the road. Both of the survivors incurred serious injuries.

Tyler, Thomas, and Rushing's widow, Felicia Rushing, filed suit, naming as defendants, among others, Peerless and AFI[1], because Dejean was underinsured. Peerless and AFI had in effect a policy of commercial automobile liability insurance including uninsured/underinsured motorist coverage. AFI also had in effect a commercial umbrella policy. Peerless and AFI originally filed a motion for

---

[1] The commercial automobile liability policy states that it was marketed through AFI and that coverage is provided in Peerless..

1

summary judgment which was denied on March 19, 2010. This court denied the application for writs filed in connection with that denial. On December 15, 2011, Defendants again filed a motion for summary judgment regarding coverage under the policies, and Plaintiffs filed a cross motion for partial summary judgment. The trial court denied Defendants' motion and granted Plaintiffs' motion. Defendants appeal.

## DISCUSSION

*Summary Judgment*

Appellate courts review a judgment granting or denying a motion for summary judgment *de novo*. *Cutsinger v. Redfern,* 08-2607 (La.5/22/09), 12 So.3d 945, 949 (citing *Bonin v. Westport Ins. Corp.*, 05-0886 (La.5/17/06), 930 So.2d 906, 910). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B); *Cutsinger*, 12 So.3d at 949. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); *Cutsinger*, 12 So.3d at 949. Thus, we ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Cutsinger, 12 So.3d at 949 (citing *Smith v. Our Lady of the Lake Hosp.*, 93-2512 (La.7/5/94), 639 So.2d 730, 750).

Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. *Id.* (citing *Bonin*, 930 So.2d at 910). An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. *Magnon*, 739 So.2d at 196 (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La.1/14/94), 630 So.2d 759). An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Id.* Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Id. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Id.* at 197; La. C.C. art. 2046. When the language of an insurance policy is clear, courts

2

lack the authority to change or alter its terms under the guise of interpretation. *Magnon*, 739 So.2d at 197 (citing *Louisiana Ins. Guar. Ass'n.*, 630 So.2d at 764). A court should only grant the motion for summary judgment when the facts are taken into account and it is clear that the provisions of the insurance policy do not afford coverage. *Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La.5/22/07), 958 So.2d 634, 638 (citing *Reynolds v. Select*, 93-1480 (La.4/11/94), 634 So.2d 1180, 1183).

Uninsured motorist coverage embodies a strong public policy, which is to provide full recovery for innocent automobile accident victims who suffer damages caused by a tortfeasor who has no coverage or is not adequately covered by liability insurance. *Cutsinger*, 12 So.3d at 949 (citing *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La.11/29/06), 950 So.2d 544, 547). The underlying purpose of uninsured motorist coverage "is to promote and effectuate complete reparation, no more or no less." *Id.* (citing *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575, 579 (La.1982)). To carry out the objective of providing reparation for persons injured through no fault of their own, the statute is liberally construed. I*d.* at 949-50 (citing Taylor v. Rowell, 98-2865 (La.5/18/99), 736 So.2d 812, 816; *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La.1987)). Any exclusion in uninsured motorist coverage must be clear and unmistakable. *Id.* at 950 (citing Duncan, 950 So.2d at 547).

*Bernard v. Ellis*, 11-2377, pp. ___ (La. 7/2/12), ___ So.3d ___, ___.

*Commercial Automobile Liability Policy*

Defendants cite the provisions of the UM portion of the policy as excluding coverage, as follows:

A. Coverage
We (Insurer) will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle'. The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident'. The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of the 'uninsured motorist vehicle'.

. . . .

B. Who is an Insured
1. You
2. If you are an individual, any 'family member'.
3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

3

4. Anyone for damages because he or she is entitled to recover because of 'bodily injury", sustained by another 'insured'.

The UM portion of the policy defines insured as you or "[a]nyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'." Occupying is defined as "in, upon, getting in, on, out or off. However, the Louisiana Uninsured Motorist Statute, La.R.S. 22:1295, requires that UM coverage be extended to anyone insured under the general liability portion of a policy of insurance. Therefore, if the employees are insured under the general liability policy, they are entitled to UM coverage under the Peerless policy.

The general liability portion of the policy defines "insured" as follows:

A. Coverage
We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto".

. . . .

1) Who is an Insured?

The following are 'insureds'

a. You for any covered 'auto'.
b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:
   (1) the owner or anyone else from whom you hire or borrow a covered 'auto'. This exception does not apply if the covered 'auto' is a 'trailer' connected to a covered 'auto' you own.
   (2) Your employee if the covered 'auto' is owned by that employee or a member of his or her household.
   (3) Someone using a covered 'auto' while he or she is working in a business of selling, servicing, repairing, parking or storing 'autos' unless that business is yours.
   (4) Anyone other than your employees, partners, a lessee or borrower or any of their

4

employees, while moving property to or from a covered 'auto'.

(5) A partner of yours for a covered 'auto' owned by him or her or a member of his or her household.

Defendants assert that the employees were not insureds under the terms of the general liability portion of the policy because of the following language:

B. EXCLUSIONS

This insurance does not apply to any of the following:

. . . .

3. Workers' Compensation
Any obligation for which the 'insured' or the 'insureds' insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or any similar law.

4. Employee Indemnification and Employers Liability
'Bodily injury' to:
a. An employee of the 'insured' arising out of andin the course of employment by the 'insured', or
b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a above

However, this court in *Hoey v. Shelter General Ins. Co.*, 98-178, pp. 4-5 (La.App. 3 Cir. 6/3/98), 715 So.2d 512, 515 considered the case of an employee injured in a rear end collision while test driving an automobile being repaired at his employer's business. This court, faced with similarly worded exclusions, found as follows:

Shelter contends that its exclusions for liability arising out of injuries to employees in the course and scope of their employment or for which the insured may be liable under workers' compensation laws disqualify Hoey from recovery under the policy. This court addressed this precise question in *Collins v. Angelina Cas. Co.*, 517 So.2d 990 (La.App. 3 Cir.1987), *writ denied*, 519 So.2d 106 (La.1987). In Collins, addressing virtually identical exclusions in a business automobile insurance policy, we concluded that not all provisions of a

5

policy will apply to uninsured motorist coverage. We noted that in some cases courts simply declare such provisions invalid or unenforceable, reasoning that the mandatory requirement of uninsured motorist coverage cannot be undercut or restricted by policy provisions. *Collins*, 517 So.2d 990. Accordingly, we find that the exclusions relied on by Shelter do not apply to uninsured motorist coverage.

Therefore, the language cited by Defendants does not work to exclude the employees from UM coverage.

The general liability portion of the policy defines "insured", in pertinent part, as: "You for any covered 'auto'" and as "Anyone else while using with your permission a covered 'auto' you own, hire or borrow."

Defendants contend that questions of fact remain with regard to whether the employees were using the truck when the accident occurred such that they can be considered insured under the policy. Defendants argue that the truck was not in use regardless of whether the employees had loaded the truck or not, because they were not driving or riding in the vehicle.

In support of their motions, the parties offered deposition testimony. Trooper Nicholas Shittone of the Louisiana State Police was the officer who responded to the accident. He stated in deposition that he was informed of the accident at 10:38 in the morning and arrived at the scene at 10:57. His report indicated that there were weedeaters in the truck and trash bags still on the ground. Photos taken of the area in connection with the police investigation of the accident show trash bags on the side of the road. Trooper Shittone stated in deposition that he didn't know if the bags were in the truck or on the side of the road at the time of the accident. He stated that there was a rake on the side of the road and trash bags that appeared to have been run over. The photographs of the truck do not show the inside of the cargo area of the pickup truck, and the bed of that area is not visible.

Joseph Wayne Singleton was an eyewitness to the accident, having been in traffic behind the driver of the van that ran over the employees. He testified that he saw people standing about five feet from the cemetery truck on the side of the road and that he saw the van run over them. He stated that it looked like they were working but that everything happened so fast, he did not have time to see. He stopped his vehicle and got out to see if he could help and saw garbage bags on the ground. He testified that he did not look inside the truck.

Dionne Thomas was also an eyewitness to the accident. She stated that she saw the van hit men who were working on the side of the road. She got out of her vehicle to see if she could help and saw shoes and work gloves on the highway and tools all over the place. She stated that there were trashbags on top of the men and rakes and gloves in the road. She testified that the tailgate of the cemetery truck was down but that she didn't notice what, if anything, was in the back of the truck.

Joseph Romero was another eyewitness to the accident. He stated that one of the employees could not have been more than a couple of feet from the cemetery truck prior to the accident. He also stopped his vehicle and got out to see if he could help. He stated that the tailgate of the cemetery truck was down and that there was a weedeater and bags of trash in the bed of the truck as well as one bag of trash beside the truck.

Thomas was a groundskeeper for Bellevue and is one of the Plaintiffs in this suit. He testified that he and the others had been cleaning an area of the cemetery for twenty or thirty minutes. Tyler got the truck from the hill where it had been parked and told them what they would be doing next. He remembered taking weedeaters and trash to the back of the truck and stated that they put the tools and trash in the truck so that they could go to the next place they were to clean. He

7

remembered putting his gloves, mask, and glasses in the truck because he always did this. After that he remembered nothing.

Tyler, Plaintiff herein, testified that he and the other employees used the truck in the cemetery to haul equipment such as weedeaters and rakes and that they attached a trailer to it to haul riding mowers. He stated that, on the day of the accident, they had cleaned the ditch area and had only a couple of bags of trash. He went up the hill to move the truck to the side of the road so that they could pick up the bags of trash. He stated that he got out and went around the truck to tell the others what they were going to do next in another part of the cemetery. They had put the rakes and weedeaters in the back of the truck, but he had not finished explaining the next job. However, he remembered nothing after that.

Caroline Wimberly worked selling plots, mausoleums, and markers for Bellevue. John Rex Edwards, part owner of Bellevue, called her and told her about the accident. She and another woman from the office went to the scene. She stated that from where she was standing, she could see into the back of the truck and that there were weedeaters, trash, and rakes in the truck. She stated that if the tailgate was up, the items had to be sticking over the back. When confronted with the pictures showing the back of the truck, she said she thought that she had seen the weedeaters and trash. She stated that Thomas told her that he was holding a bag of trash and walking to put in the back when struck.

Edwards testified in deposition that when he arrived at the scene of the accident, there were bags stacked in the back of the truck as well as two or three weedeaters and a leaf blower. He testified that the employees were constantly working in and out of the truck.

The question of use herein presents a mixed question of law and fact. However, if no question of fact remains as to the activities of the employees on the

8

day of the accident, summary judgment is proper. *See Bob v. Benoit*, 96-04 (La.App. 3 Cir. 5/8/96), 673 So.2d 1321; *Palermo v. Audubon Ins. Co.*, 96-887 (La.App. 3 Cir. 2/5/97), 689 So.2d 589; *Simon v. Orange Leader Newspaper, Inc.*, 94-589 (La.App. 3 Cir. 12/7/94), 647 So.2d 624.

We must determine whether the facts currently before us present two interpretations from which the trial court could chose or whether those facts are sufficient to allow a determination as to whether the employees were using the vehicle. In other words, what the employees were doing is a question of fact; whether those actions constitute use is a question of law.

> [S]ummary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts. *Cates*, 328 So.2d at 370 (reasoning that "[f]rom the uncontroverted facts before us, we can reach no other conclusion under the present state of the law" to resolve contributory negligence issue on summary judgment); *Sally Beauty Co. v. Barney*, 442 So.2d 820, 822 (La.App. 4th Cir.1983) (summary judgment granted on intent issue when "no uncertainties that require the trial court to go beyond the evidence"); *Johnson v. Edmonston*, 383 So.2d 1277, 1281 (La.App. 1st Cir.1980) (summary judgment appropriate when based on review of undisputed facts reasonable men could only conclude movers were not negligent); *Hamilton v. State Farm Mutual Automobile Ins. Co.*, 364 So.2d 215, 218 (La.App. 3d Cir.1978), writ denied, 366 So.2d 915 (La.1979) (insurer's summary judgment motion granted on residency issue where evidence before court "without dispute and contains every fact material and necessary to a determination of plaintiff's residency at the time of accident"); *Bouterie v. Kleinpeter*, 289 So.2d 163, 168 (La.App. 1st Cir.1973), *writ denied*, 293 So.2d 169 (La.1974) (noting that merely because dispute exists as to conclusion to be drawn from facts does not preclude summary judgment); *Ocmond v. Eserman*, 259 So.2d 600 (La.App. 4th Cir.), *writ denied*, 261 La. 825, 261 So.2d 230 (1972) (finding summary judgment evidence presented no factual contradictions "only conflicting conclusions based on those facts").

*Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, pp. 29-30 (La. 7/5/94), 639 So.2d 730, 752.

9

The facts herein have been marshaled, and there is no suggestion that further facts will be adduced at trial. We must determine whether the law supports the conclusion that the employees were using the truck based on the facts in evidence.

> The jurisprudence has consistently found that "use" of a vehicle is not limited to "operation" of a vehicle. Louisiana circuit courts have previously found that an occupant of a vehicle is "using" the vehicle. *See*, e.g., *Stunkard v. Langlinais*, 97-1006 (La.App. 3 Cir. 2/4/98), 708 So.2d 1117; *Cagle v. Playland Amusement Inc.*, 202 So.2d 396 (La.App. 4th Cir.1967); *Garvey v. Great Atlantic & Pacific Tea Co.*, 125 So.2d 634 (La.App. 4th Cir.1961); *Bolton v. North River Ins. Co.*, 102 So.2d 544 (La.App. 1st Cir.1958). This view is also widely supported by national jurisprudence. *See* 8 Couch on Insurance 3d, §§ 111.31, 119.37 (2011) (citing a multitude of national jurisprudence). "When 'use' is distinguished from 'operation,' it has been held that the former denotes the purpose for which the automobile was employed while the latter refers to its actual physical operation or manipulation of controls." *Id*. at § 119.37. "The term 'use' is a broad catchall designed to include all uses of the vehicle not falling within the terms 'ownership' or 'maintenance,' and involves simply employment for the purposes of the user." *Id*. Therefore, we hold the word "use" has a broader meaning than operation of the vehicle and generally includes any use of a vehicle related to its inherent purpose. The Plaintiffs, who were riding as guest passengers in the vehicle, were clearly using the vehicle in a manner related to the vehicle's inherent purpose (i.e., as a means of transportation).

*Bernard,*___ So.3d at ___.

We conclude that the employees' activities constitute a use of the truck related to its inherent purpose. This truck was not used solely as individual transportation, and transportation for human beings is not the only activity which can constitute use of the truck. The truck was integral to the work of cleaning up the cemetery. Although there is conflicting evidence as to the location of the tools and bags of trash, the testimony makes it clear that the employees were in the process of using the truck to take their tools and the trash they had gathered to another part of the cemetery. They had not abandoned that activity to take up another activity unrelated to the task of loading the truck and moving to another location. There is no evidence of record to suggest that the employees were

undertaking other work at the side of the road. The truck was on the side of the road solely to allow it to be loaded with tools and trash and to take those items and the employees to another location for further work. But for the need to use the truck, the employees would not have been on the side of the road. Had they not been doing this, they would not have been injured.

Therefore, we conclude that no question of fact remains and that the employees are insured as defined by the general liability portion of the policy and, therefore entitled to UM benefits.

*Commercial Umbrella Policy*

The original commercial umbrella policy issued to Bellvue by AFI states in Section 1 – Coverage:

A. INSURING AGREEMENT

1.　　We will pay on behalf of the insured those sums in excess of the **Retained Limit** that the insured becomes legally obligated to pay as damages because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies. No other obligation or liability to pay sums.

2.　　This insurance applies only to:

　　a.　　**Bodily Injury** or **Property Damage**:

　　　　(1)　　Occurring during the Policy Period; and

　　　　(2)　　Caused by an **Occurrence** that takes place in the **Coverage Territory**; and

　　b.　　**Personal Injury**:

　　　　(1)　　Caused by an **Offense** arising out of the conduct of your business excluding advertising, publishing, broadcasting or telecasting done by you or for you; but

　　　　(2)　　Only if the **Offense** was committed in the **Coverage Territory** during the Policy Period; and

　　c.　　**Advertising Injury**:

>    (1)   Caused by an **Offense** committed in the course of advertising your goods, products or services; but
>
>    (2)   Only if the **Offense** was committed in the **Coverage Territory** during the Policy Period.

3.   Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

4.   The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE.

Under Section C. EXCLUSIONS, the policy provides as follows:

1.   This insurance does not apply:

>    a.   To liability imposed on the insured under any of the following laws:
>
>    . . . .
>
>    (4)   **Automobile** no-fault, uninsured motorists or underinsured motorists law[.]

A number of endorsements to the policy were attached to it.

Defendants assert that the umbrella policy specifically excludes 1) umbrella coverage for bodily injury "to an employee of the insured arising out of and in the course of employment by the insureds; or ...the spouse, child, parent, brother or sister of that employee as a consequence of (1) above;" and 2) coverage for liability imposed on the insured under automobile no-fault, uninsured motorist, or underinsured motorist law[2].

1) "Course of employment" exclusion.

Although Defendant asserts that the endorsement excludes coverage for all injuries to employees in the course and scope of their employment, a

---

[2]   We note that while Defendants refer to endorsement numbers, we find no endorsements designated with those numbers which contain the language quoted by Defendants. Further, Defendants have not referred to the quoted language or the endorsement by record volume and page. "The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made." Uniform Rules--Courts of Appeal, Rule 2-12.4. For reasons of judicial economy, we will consider the assignment of error. In spite of the deficiency.

reading of the endorsement shows otherwise. Endorsement 14-82 (2/93) reads as follows:

> Unless applicable, valid and collectible insurance is provided by Underlying Insurance and then only to the extent of the coverage afforded by that Underlying Insurance and subject to Condition S. –Maintenance of Underlying Insurance, this insurance does not apply to Bodily Injury:
>
> (1) To an employee of the insured arising out of and in the course of employment by the insured; or
>
> (2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

Therefore, this provision applies to exclude coverage for injury arising out of the course and scope of employment only where no underlying coverage exists. Here, we have found that Bellevue's UM coverage applies. Therefore, the injury to the employees is not subject to this exclusion.

2) UM exclusion.

Defendants further point to the following language in Endorsement 14-139 (9/02) as excluding coverage for liability imposed under UM law:

> A. Section 1.C Exclusion, subparagraph 1.a.(4) is amended to read:
> 1. This insurance does not apply:
>
> a. To liability imposed on the insured under any of the following laws:
>
> (4) Automobile uninsured or underinsured motorist law other than the compensatory damaged the insured is legally entitled to recover from the owner or driver of an **Uninsured Motor Vehicle** for which coverage is provided by Section B. of this endorsement.

However, Section B of the Endorsement adds the following language to Section 1.A of the Insuring Agreement:

> 1. We will pay those sums in excess of the **Retained Limit** that the insured is legally entitled to recover as compensatory

13

damages from the owner or driver of an **Uninsured Motor Vehicle** resulting from **Bodily Injury** sustained by the insured caused by an occurrence. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **Uninsured Motor Vehicle**.

2. This insurance applies only to the extent of coverage afforded by applicable, valid and collectible **Underlying Insurance** subject to Condition S., **Maintenance of Underlying Insurance**.

The policy defines "Retained Limit" as "the total amount of Underlying Insurance applicable to the injury…whether such Underlying Insurance is collectible or not."

We have found that the employees are entitled to collect under Bellevue's underlying UM policy. Further, Section A of this endorsement provides that the insurance excludes liability for UM **except** as provided in Section B of the endorsement. Therefore, the trial court correctly found that no question of fact remains and that the umbrella policy provides coverage to the extent that the damages imposed are in excess of the underlying UM coverage.

## CONCLUSION

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendants, Peerless and AFI.

AFFIRMED.

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1421

MICHAEL P. TYLER, ET AL.

VERSUS

JOSEPH DEJEAN, ET AL.


PICKETT, J., dissenting.

I respectfully dissent. Given the facts presented at the hearing on the motion for summary judgment, I find there is a genuine issue as to whether the employees were using the vehicle at the time of the accident. I would reverse the judgment of the trial court finding coverage in the commercial automobile liability policy and the commercial umbrella policy, and remand for a trial.