819 So.2d 477 (2002)
Patrick GRANGER and Linda Granger
v.
Scott S. GUILLORY, et al.
Nos. 01-1539, 02-83.
Court of Appeal of Louisiana, Third Circuit.
June 5, 2002.
*478 Gracella Gail Simmons, Keogh, Cox, & Wilson, Baton Rouge, Louisiana, Kenneth O'Neil Privat, Attorney at Law, Crowley, Louisiana, for Defendant/Appellant, Scott S. Guillory.
Scott G. Jones, Hulse & Wanek, New Orleans, Louisiana, for Defendant/Appellant, Continental Insurance Company.
*479 Thomas Fitzgerald Porter, IV, Aaron Wayne Guidry, Porter, Denton & Guidry, Lafayette, Louisiana, for Plaintiffs/Appellees, Patrick & Linda Granger.
Leah B. Guilbeau, John E. Ortego & Associates, Lafayette, Louisiana, for Appellee, State Farm Mutual Auto Insurance Company.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and BILLIE COLOMBARO WOODARD, Judges.
WOODARD, Judge.
Mr. Patrick and Ms. Linda Granger sued Mr. Scott Guillory and Continental Insurance Company (Continental) for personal injuries, which they received when horses, which Mr. Guillory owned, ran free on the highway and into their car. The trial court found that there was insurance coverage and that Mr. Guillory is liable to the Grangers. Mr. Guillory appeals, regarding liability; Continental appeals, concerning coverage. We affirm.

* * * * *
On March 14, 1997, an accident occurred on Louisiana Highway 182, near Grand Couteau Road in St. Landry Parish, Louisiana, when the Grangers' car struck two horses, who were running free on the highway. Mr. Scott Guillory owned the horses. They had escaped from his property at 320 Carmen Drive in Arnaudville, Louisiana. After Ms. Granger struck them, Mr. Bryant Rivette hit the rear of her vehicle and pushed it off the road, injuring the Grangers.
On November 14, 1997, the Grangers filed suit against Mr. Scott Guillory, Continental, and others. Continental had issued a insurance policy, on the 320 Carmen Drive property, to Mr. George Guillory, Scott's father.
Continental filed a summary judgment motion, claiming no coverage, which the trial court denied. It sought writs to this court, which we denied. On December 4, 2000, the trial court heard the matter and took it under advisement, pending the parties' post-trial memoranda. On March 26, 2001, it issued reasons for judgment and signed the judgment on May 17, 2001. It ruled in the Grangers' favor, regarding coverage and liability, awarded past medical expenses of $9,714.55, and general damages of $24,000.00.
Both, Continental and Mr. Scott Guillory filed a suspensive appealthe former, concerning coverage; the latter, liability. Neither appealed the damage awards.

* * * * *

LIABILITY
In his reasons for judgment, the trial court explained why it found Mr. Guillory to be negligent:
St. Landry Parish Police Jury Ordinance 5-33 applies to this case, and it makes it unlawful for Mr. Scott Guillory to have allowed his horses onto Louisiana Highway 182 in St. Landry Parish, Louisiana. This Ordinance, taken in conjunction with the pronouncement in Article 2321 of the Louisiana Civil Code, which allows the Court to interject the adoption of res ipsa loquitur in appropriate cases, is controlling. Based upon that Ordinance, the Civil Code Article, and the jurisprudence, the Court finds that the sole proximate cause of the accident and resulting injuries lies with Mr. Scott Guillory. The Court specifically concludes that there is insufficient evidence to apply the doctrine of comparative negligence.
Nevertheless, Mr. Guillory contends that the trial court erred when it found him to be negligent under La.Civ.Code art. 2321 *480 and the res ipsa loquitur doctrine. La. Civ.Code art. 2321 provides that:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

(Emphasis added.)
Mr. Guillory testified that, basically, his property is divided into four quadrants, with the barn, housing the horses, located in one of them. There is a five-and-one-half to six-foot-tall fence around the property. In the barn, the stalls have wooden gates with a latch. The barn has two gates, which are normally closed. There is a gate on the perimeter of the quadrant where the barn is located, which he uses to access the barn.
He testified that on the night of the accident, he and his family had left home to go to a basketball banquet in Abbeville. That day, before leaving, he fed the horses and on the way out, he locked everything the stall doors, the barn doors, and the access gate. After the accident, he said that he inspected the barn and surrounding area, where the horses had escaped and found their access gate and barn door still secured. He observed hoof prints, near the wooden gate outside the barn, which indicated to him that the horses were running in a circular type fashion. He speculated that this was because someone/a dog was chasing them. He, also, examined the entire perimeter of his property and could not find any place where the fence had been broken, cut, or run through. He maintains that he is not the one who let his horses out on the night of the accident and that they could not have jumped the fence, thus, he urges that someone else must have opened the gate.
Therefore, Mr. Guillory argues that, since the Grangers offered no evidence that he, either, failed to lock the gates or that any fence on his property had defects, they presented no evidence to establish his negligence and, thus, they have not met their burden of proof under La.Civ.Code art. 2321.
However, La.Civ.Code art. 2321 permits the trial court to apply the res ipsa loquitur doctrine. In 1989, in a medical malpractice case, Cangelosi v. Our Lady of the Lake Med. Ctr.,[1] our supreme court provided us with guidance regarding the proof required under this doctrine, as well as its applicability.
Essentially, res ipsa loquitur fills the legal gap in a negligence case, when there is no direct evidence, concerning the cause of the injury, available to the plaintiff.[2] Thus, the doctrine is a rule of circumstantial evidence, which is appropriate for those situations involving accidents that normally do not occur, absent negligence.[3] "Application of the doctrine creates a permissive inference (which the jury *481 may draw or refuse to draw) rather than a presumption (which requires a directed verdict for the plaintiff if the defendant offers no evidence to rebut it.)"[4]
The supreme court outlined three factors that a plaintiff must satisfy in order to utilize the doctrine; namely:
1) Plaintiff must present evidence which indicates at least a probability that injury would not have would not have occurred without negligence,
2) should sufficiently exclude inference of his or her own responsibility or responsibility of others besides defendant in causing accident,
3) and must establish that negligence falls within scope of duty to plaintiff;
Importantly, the court added that a plaintiff does not have to eliminate all other possible causes or inferences.[5]
In the instant case, the Grangers have satisfied requirements one and three. Specifically, the Defendant owned and had control of the horses and, therefore, had a duty to protect others against the kind of situation which the Grangers encountered. Furthermore, it goes without saying, that absent negligence, normally, two domestic horses do not find themselves on a closed range highway, endangering traffic. However, at first glance, proving the responsibility of others, besides the Defendant's, in causing the accident, appears problematic, since Mr. Guillory emphatically contends that he secured the barn and access gates before leaving; therefore, someone else was responsible for his horses' escape, and the Grangers have offered no evidence to negate others involvement.
This requirement begs the question of what does "others" mean. Surely, it does not mean that Plaintiffs must prove the negative (that no one else in the Universe opened the gates), as this is an impossibility. Indeed, a reading of this requirement in context, reveals that "others" means other identified players in the process. For example, in a medical malpractice case, such as Cangelosi, there were identifiable nurses and other doctors who could have been responsible for the injury players whose actions could be traced and examined. On the contrary, in the instant case, there are no other known potential tortfeasors. We only have the Defendant's speculation that someone else must have done the nefarious deed, since he did not. This is even more implausible, given the intricacies of his elaborate latching system. He described the process:
A. I got this thing tied in a certain way where you have to pick the gate up, wrap the chain on it. You almost have to know how to take the chain off of this to get it off.
Q. How do you open that gate?
A. With a chain. You take it off of a nail. I'd have to have, I guess, something to show you. It's just the chain is wrapped around the gate around the post on a nail.
Q. And then it just opens? The gate just opens once you remove the chain?
A. No, you have to push it open.
Q. Isn't it true, Mr. Guillory, that this gate is constructed in such a way where you have to lift it, push it, to get it opened?
A. Correct.
Thus, apparently, opening this gate requires knowledge of Mr. Guillory's idiosyncratic engineering, which implies that it was opened by someone other than a mischievous *482 passerby. However, he offers no alternative possibilities.
We do not believe that the supreme court intended for "others," specified in the second provision enumerated in Cangelosi, to include such a phantom passerby. Moreover, Cangelosi explicitly states that "The plaintiff ... does not have to conclusively exclude all other possible explanations [other than the defendant's negligence] for his injuries, because the standard is not proof beyond a reasonable doubt" but, simply, more probably than not.[6]
Accordingly, the trial court was correct in applying the res ipsa loquitur doctrine, which created an inference that Mr. Guillory was negligent, shifting the burden of proof to him. However, he offered no plausible defense other than his assertions that he secured the area and was not responsible. Obviously, the trial court made a credibility call and did not believe this.
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.[7]
We find no manifest error and affirm the trial court's finding of liability.

INSURANCE COVERAGE
Continental argues that Mr. Scott Guillory is not an "insured" under the liability portions of the Guillorys' policy. One month before the accident, Mr. Scott Guillory purchased the 320 Carmen Drive property from his parents, Mr. and Ms. George Guillory. At the time of the accident, they held a mortgage on the home. Before this accident, Continental had issued an insurance policy to them. Mr. George Guillory testified that, when he sold the property, he advised his insurance agent not to cancel its coverage.
Importantly, following the sale to his son, Continental neither notified Mr. George Guillory that there would be no coverage nor did it return his premiums or indicate to him that the property was not fully covered. Nevertheless, Continental urges that there is no coverage because Scott Guillory is not a "covered person." It relies on Palermo v. Audubon Ins. Co.[8] There, we reversed the trial court's finding of coverage where the tortfeasor, Troy Drouin, was not listed as a named insured on his father's insurance policy. However, Palermo is distinguishable from this case in a significant respect. There was no evidence, indicating that his father, Roy Drouin, actually notified his insurance agent that he intended to have coverage *483 extended to his son, as there is in the instant case.
And, in Bonadona v. Guccione,[9] our supreme court faced a similar issue, finding coverage:
Where an insurance policy is issued to cover certain risks of a named insured, if these risks are transferred to or assumed by another person who continues to pay the insurance premiums for their coverage, the insurer is bound by the knowledge of its agent and is estopped to deny its liability or the reformation of its policy to cover such risks incurred by the other person, when it has accepted the payment of premiumss from or for him knowing of the change or addition of insured expressly or impliedly intended (even though there has been no formal endorsement reflecting the change or addition of insured) at least in the absence of proof that the risks thus insured would be different in nature or substantially greater than those initially covered by the policy.
Furthermore, Continental insists that the property is covered, only, under the policy's Fire Dwelling Endorsement. However, that location is, specifically, identified under the Optional Excess Liability Endorsement of the coverage summary and provides coverage for it, up to $500,000.00. Mr. George Guillory testified that he purchased the property for approximately $132,000.00. The coverage summary shows two separate endorsements for "dwelling fire." The first one is "Dwelling Fire Liability," which identifies the property as a dwelling. Under that endorsement heading, the coverage contains a $500,000.00 limit for "Personal Liability." The summary has a second coverage heading for "Dwelling Fire Liability," which contains a $123,200.00 limit for property damage.
Considering all of the above, we find that 320 Carmen Drive is an insured location under, both, the policy's liability and excess liability provisions.

HORSESA BUSINESS PURSUIT?
Continental raises the policy's business pursuit exclusion as a defense for coverage.
Mr. Scott Guillory testified that he does sell horses but, only, when they are no longer useful as show horses, that "[i]t would be more of a loss than an income." He explained that raising and selling horses is more like a hobby and a 4-H project.
Thus, we find no manifest error in the trial court's factual findings on this issue and affirm.

CONCLUSION
We affirm the trial court's decision, finding Scott Guillory to be liable and finding there to be insurance coverage under the Continental policy, and we cast Continental with the appeal's costs.
AFFIRMED.
NOTES
[1] Cangelosi v. Our Lady of the Lake Regional Med. Ctr., 564 So.2d 654 (La.1989).
[2] Id.
[3] Id.
[4] Id. at 665, fn. 7, citing RESTATEMENT (Second) OF TORTS § 328D (1965), comment m.
[5] Cangelosi, 564 So.2d 654.
[6] Id. at 664.
[7] Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989) (citations omitted).
[8] 96-887 (La.App. 3 Cir. 2/5/97); 689 So.2d 589, writ denied, 97-368 (La.3/21/97); 691 So.2d 93.
[9] 362 So.2d 740, 743 (La.1978).