890 So.2d 756 (2004)
Cynthia HONEYCUTT, Plaintiff-Appellee,
v.
STATE FARM FIRE & CASUALTY CO., et al., Defendants-Appellants.
No. 39,301-CA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 2004.
*757 Ronald F. Lattier, Curtis R. Joseph, Jr., Shreveport, for Appellants State Farm Fire & Casualty Co., Larry J. McMullen and Amy L. McMullen.
Norman R. Gordon & Assoc., L.L.C. by W. Brett Cain, Shreveport, for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
GASKINS, J.
In this case involving a collision between a cow and a motor vehicle, the defendants appeal from a judgment holding the cow owners and their insurer liable for damages sustained by the motorist who struck the cow. We affirm.

FACTS
In the early morning hours of June 5, 2002, Cynthia Honeycutt, age 26, was driving her 1998 Mitsubishi Montero Sport west on Buncombe Road in Caddo Parish. She was going between 50 and 55 mph. She suddenly came upon a cow blocking her lane of traffic. Although she slammed on her brakes, she was unable to avoid hitting the cow. As a result of the collision, Ms. Honeycutt was injured. The cow was killed. Also, the Honeycutt vehicle sustained significant exterior and interior damage. The air bags deployed, and the dashboard was "busted." The front left exterior of the vehicle received severe damage.
On March 13, 2003, Ms. Honeycutt filed suit against Ray McMullen as the owner of the cow. She also named State Farm Fire & Casualty Company as a defendant, asserting that it provided liability coverage *758 to Ray McMullen. On March 28, 2003, Ray McMullen filed an answer in which he denied ever owning the cow. In April 2003, the plaintiff filed an amended petition in which she substituted Larry J. McMullen and Amy L. McMullen as defendants in place of Ray McMullen.
In June 2003, the McMullens and State Farm filed an answer in which they asserted Ms. Honeycutt's fault as the sole cause of the accident.
A bench trial was held on March 3, 2004. Ms. Honeycutt and Larry McMullen were the only witnesses to testify; the deposition of Corporal Richard Lopez of the Caddo Parish Sheriff's Office was admitted into evidence, as was the accident report he wrote. The defendants made a motion in limine that any reference to strict liability be struck from the record since, under La. C.C. art. 2321, a negligence analysis was appropriate. The plaintiff made no objection, and the motion was granted. The parties stipulated that State Farm provided coverage.
Ms. Honeycutt testified that she frequently traveled the road where the collision with the cow occurred. According to her testimony, prior to the accident, portions of the fencing drooped in the area where the wreck happened. By her estimate, the fence drooped low enough for a person to step over it.
As to her injuries, Ms. Honeycutt testified that she suffered burns on her face, arms and chest from the air bags. She also had bruises from the air bags and her seat belt. Since the accident, she said she had been suffering from lower back problems. The morning after the accident she went to Willis-Knighton Quick Care where she was given muscle relaxers to which she had an allergic reaction. She saw a chiropractor, Dr. John Thompson at Pines Chiropractic, from June 11 to October 22, 2002. She worked for Dr. Thompson from November 2002 until May 2003 and received additional free treatment during that time. She was diagnosed with fibroid tumors which her gynecologist said could be causing some back pain; however, a hysterectomy did not cure her back problem.
According to Ms. Honeycutt's testimony, she was unable to continue babysitting as a result of the accident; she estimated her lost income at $680. She said her back pain had restricted her ability to do housework and play with her three children.
Larry McMullen testified that he had lived on Buncombe Road for 32 years. He had 48 acres of fenced property; he ran cattle on about 25 acres. He had replaced the fencing in 1994 or 1995. Some spot repairs were made in 1999. Since the accident, he had replaced a significant portion of the fencing. He testified that he inspected his fences every day or two. At the time of the accident, the fence was constructed of hog wire with barbed wire on top; it stood about five feet tall.
McMullen was not sure what he would characterize as "too much drooping." He stated that even a brand new barbed wire fence would droop a little bit within "a month or two." He also said that he had not had any fencing droop low enough to step over.
According to McMullen, the 700-pound cow involved in the accident had been purchased earlier that same day at Panola Livestock. He got it home at about 6:00 or 7:00 p.m. without any problems. No one had told him the cow had any propensity to escape pastures.
When he learned the next morning that his cow was involved in the accident, he inspected the entire fence line; he found no holes or drooping places where a cow could walk out. No gate was open either. A cow leaving the property would have *759 had to go through two gates. He had never had a cow escape before this incident; nor had he had a cow escape since it happened. His only explanation for the cow's escape was that it must have jumped the fence.
Corporal Lopez testified that he arrived at the accident site at 1:53 a.m. It was dark and there were no lights illuminating that stretch of road. He could not recall if he investigated how the cow escaped. He was unable to recall any downed fences or open gates in the area of the collision. He testified that no one gave him any information as to how the cow might have gotten out. No photographs of the accident site were taken.
At the conclusion of the plaintiff's case, the defendants moved for a directed verdict. The motion was denied without comment. At the conclusion of the defendants' case, the court ruled on the liability issue. It concluded that either the height of the fence was inadequate or there must have been a gap or a droop in the fence. Although the case was "fairly close," the court found that it could apply res ipsa loquitur and infer negligence. The court took the issue of quantum under advisement.
On March 8, 2004, the trial court issued written reasons on quantum. The court concluded that the plaintiff's treatment was "conservative, reasonable and necessary." She was found to be entitled to $3,674 in special damages for medical treatment. However, finding that the proof was inadequate, the court declined to award lost wages. Due to the "violent and serious nature of the impact" and the plaintiff's credible evidence of pain and suffering, the court awarded general damages of $10,000. Judgment in conformity with the trial court's ruling was signed on May 10, 2004.
The defendants appealed.

LIABILITY FOR COW

Law
La. C.C. art. 2321 states:

The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. [Emphasis added.]
Since the 1996 amendment to Art. 2321, strict liability has been abolished for all animal owners except dog owners. Thus, the standard for owners of animals other than dogs is ordinary negligence. Pepper v. Triplet, XXXX-XXXX (La.1/21/04), 864 So.2d 181. The last sentence of La. C.C. art. 2321 permits the trial court to apply the res ipsa loquitur doctrine.
Guidance as to the application of res ipsa loquitur was set forth in Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989), a medical malpractice case. Essentially, res ipsa loquitur fills the legal gap in a negligence case, when there is no direct evidence, concerning the cause of the injury, available to the plaintiff. Thus, the doctrine is a rule of circumstantial evidence, which is appropriate for those situations involving *760 accidents that normally do not occur, absent negligence. Application of the doctrine creates a permissive inference (which the trier of fact may draw or refuse to draw) rather than a presumption (which requires a directed verdict for the plaintiff if the defendant offers no evidence to rebut it.). See also Granger v. Guillory, XXXX-XXXX, 2002-83 (La.App. 3d Cir.6/5/02), 819 So.2d 477, writs denied, XXXX-XXXX, XXXX-XXXX (La.10/4/02), 826 So.2d 1132.
A plaintiff must satisfy three factors in order to utilize the doctrine:
(1) present evidence which indicates at least a probability that injury would not have occurred without negligence;
(2) sufficiently exclude inference of his or her own responsibility or responsibility of others besides the defendant in causing the accident; and
(3) establish that negligence falls within the scope of duty to the plaintiff.
A plaintiff does not have to eliminate completely all other possible causes or inferences. Cangelosi, supra; Granger, supra.
In the Granger case, the Third Circuit found that the doctrine of res ipsa loquitur permitted an inference of negligence against the owner of two horses that had escaped onto a highway. The horse owner testified that an inspection of his property perimeter revealed no place where his fence was "broken, cut, or run through." The access gate and barn door were still secured. He maintained that the horses could not have jumped the fence and that someone else must have opened the gate, allowing the horses to escape. The appellate court approved the trial court's application of res ipsa loquitur. It found that, absent negligence, domestic horses do not find themselves on a closed range highway, endangering traffic. Although the horse owner insisted that someone else had to have opened the gate, there were no other known potential tortfeasors. Finding no manifest error, the court of appeal affirmed the trial court's ruling on liability.
In Buller v. American National Property & Casualty Companies, 2002-820 (La.App. 3d Cir.2/5/03), 838 So.2d 67, the driver of a pickup truck struck one of several cows that had wandered onto the road. The trial court apportioned 75 percent comparative fault against the driver because he was inattentive; he failed to see the white cow in daylight on a straight, unobstructed road and he admitted looking down to check his tape player just before hitting the animal. The cow owner was assessed with 25 percent comparative fault. Although he inspected his fences at least every other day and he stated he observed no deficiencies in the fence after the accident, he admitted that when he was returning the cows to his pasture they "jumped into the fence and went through it." Also, he had been contacted by the sheriff several times in the months preceding the accident about escaped cows. In assessing fault against the cow owner, the trial court referred favorably to the Granger case.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *761 But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).

Discussion
Contrary to the defendants' contention, the trial court did not apply strict liability to the instant case. Instead, the court relied upon the doctrine of res ipsa loquitur, as permitted by La. C.C. art. 2321.
In ruling on liability, the trial court stated that it felt it could make "proper common sense inferences," applying res ipsa loquitur and inferring negligence. Under the circumstances of this case, the court said it was unable to rule that there was no liability. In its judgment, the trial court stated that, in its opinion, the height of the McMullen fence was insufficient and that the plaintiff had proven liability as to the defendants.
We find that the trial court was correct in applying the res ipsa loquitur doctrine. It created an inference that the defendants were negligent. Absent negligence, a cow confined within fencing of proper height and maintenance will not wander into the center of the roadway in the middle of the night, endangering motorists. However, McMullen offered no plausible explanation except to testify that neither he nor any member of his family left the gates open and that he observed no open or drooping areas in his fence. He did admit that even new fencing will droop to some extent within a short time. Ms. Honeycutt, on the other hand, testified that she consistently traveled this road on her way home and that she had noticed that some of the fencing in the area of the accident drooped significantly. The trial court made a credibility call which we will not disturb on appeal. Finding no manifest error in the trial court's decision, we affirm its judgment in favor of the plaintiff and against the defendants.

CONCLUSION
The trial court judgment in favor of the plaintiff/appellee is affirmed. Costs of this appeal are assessed against the defendants/appellants.
AFFIRMED.