# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 16, 2010

No. 08-31237

Lyle W. Cayce
Clerk

STATE FARM FIRE & CASUALTY CO; LJMB, INC., doing business as Brian's Superette; BRIAN WEDERSTRANDT; AMANDA WEDERSTRANDT; LJMB, INC., doing business as Talk of the Town Beauty Salon,

Plaintiffs-Appellants

v.

DELTA BEVERAGE GROUP INC.,

Defendants-Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This is a tort suit arising under Louisiana law, in which this court's jurisdiction is based on diversity of citizenship. The question is whether a beverage distribution company, Delta Beverage Group, Inc. (Delta), can be held liable for a fire at a convenience store that appears to have started in one of the company's beverage coolers. The district court granted summary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-31237

judgment in Delta's favor. We affirm because even when the evidence is viewed in the light most favorable to the plaintiffs, it does not exclude with a fair amount of certainty several reasonable hypotheses, under which the negligent actions of someone other than a Delta employee was the cause of the fire.

## BACKGROUND

This case started with a fire that broke out on February 16, 2006, at Brian's Superette, a small grocery store and gas station in Maurepas, Louisiana. The plaintiffs are as follows: LJMB, Inc., which is the owner of Brian's Superette as well as a neighboring business, Talk of the Town Beauty Salon (Talk of the Town); Brian and Amanda Wederstrandt, who are the owners of LJMB and the operators of the two businesses; and State Farm Fire & Casualty Co. (State Farm), which was LJMB's insurer at the time of the fire. LJMB seeks damages for losses not reimbursed by State Farm, and State Farm seeks to recover as the subrogated insurer of LJMB and on behalf of its insureds. The plaintiffs sued three defendants: Delta, which is the local distributor of Pepsi products; Coca-Cola Enterprises, Inc. (Coca-Cola); and True Manufacturing Company (True), which manufactured the beverage coolers. Both Delta and Coca-Cola had installed beverage coolers manufactured by True in Brian's Superette. The plaintiffs settled with True during mediation. More recently, after the district court granted summary judgment in favor of Delta and Coca-Cola and while this suit was on appeal, the plaintiffs settled with Coca-Cola. Thus, Delta is now the only remaining defendant.

Brian Wederstrandt had contracts with both Coca-Cola and Delta under which the two companies installed beverage coolers in the store. The parties agree that the fire began in a Pepsi cooler positioned along a wall of the store, by the checkout counter. During the years between the store's

No. 08-31237

opening in 2003 and the fire in 2006, the coolers were arranged and rearranged in different positions next to one another along that wall. Some time in 2004, Delta employees moved two Coca-Cola coolers from their positions along the wall in order to make room for two Pepsi coolers. There were then two Pepsi coolers and one Coca-Cola cooler along the wall. In January 2005, there was a maintenance issue with one of the Pepsi coolers along the wall, which was repaired by Delta. In July 2005, Coca-Cola installed a small cooler next to the three larger coolers.

When the fire broke out on February 16, 2006, it did substantial damage to both Brian's Superette and Talk of the Town. The parties agree, based on expert testimony, that the fire originated in one of the two Pepsi coolers arranged along the wall by the checkout counter, most likely due to an electrical malfunction. They also agree that the electrical malfunction occurred due to the cooler's being plugged into an extension cord, in violation of both the cooler's installation manual and the National Electrical Code.[1] There is no direct evidence concerning who plugged the cooler into the extension cord. Conceivably, it could have been (1) Wederstrandt; (2) one of Wederstrandt's employees at the store; (3) one of Delta's employees when they installed or repaired the Pepsi coolers; or (4) one of Coca-Cola's employees when they installed or repaired the Coke coolers.

The parties consented to have their case decided by a magistrate judge, who rendered summary judgment for the defendants. The plaintiffs appealed, and subsequently settled with Coca-Cola, leaving Delta as the remaining defendant-appellee.

## DISCUSSION

---

[1] One of the plaintiffs' experts surmised that plugging in the extension cord could have caused low voltage, leading to the overheating of the compressor in the Pepsi beverage cooler, or a failure of the compressor motor windings.

No. 08-31237

"This court applies a de novo standard of review when determining whether a district court erred in granting summary judgment." *LaBarge Pipe & Steel Co. v. First Bank*, 550 F.3d 442, 449 (5th Cir. 2008). Summary judgment is proper when the evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[W]e are obliged to construe all the evidence and reasonable inferences deduced therefrom in a light most favorable to . . . the nonmoving party in the court below." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009) (alteration in original) (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1260 (5th Cir. 1991).

To recover for negligence under Louisiana law, "the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of the harm was within the scope of the protection afforded by the duty breached." *McCloud v. Hous. Auth. of New Orleans*, 987 So. 2d 360, 362-63 (La. Ct. App. 2008).

Here, because the parties agree that the fire most likely started in a Pepsi cooler due to its having been plugged into an extension cord, Delta would be liable for the fire if a Delta employee who breached a duty and thereby plugged the Pepsi cooler into an extension cord, causing the fire. The plaintiffs do not have direct evidence of Delta's culpability: Wederstrandt does not have personal knowledge of who plugged the Pepsi cooler into an extension cord and did not even know until after the fire that the cooler was plugged into an extension cord. The plaintiffs acknowledge that "all of the evidence regarding who used the extension cord is circumstantial," but

No. 08-31237

contend that they have put forward enough circumstantial evidence to justify an inference that it was more likely than not a Delta employee who plugged the cooler into an extension cord.  Under Louisiana negligence law,

> [u]se of circumstantial evidence and the deductions and inferences arising therefrom is a common process for establishing liability in negligence cases.  However, the inferences drawn from the circumstantial evidence must cover all the necessary elements of negligence, and the plaintiff must still sustain the burden of proving his injuries were more likely than not the result of the defendant's negligence.  If circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty.  This does not mean, however, that it must negate all other possible causes.

*Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1090 (La. 2009) (internal citations omitted); *see also Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006); *Benjamin ex rel. Benjamin v. Hous. Auth. of New Orleans*, 893 So. 2d 1, 4-5 (La. 2004); *Stroik v. Ponseti*, 699 So. 2d 1072, 1079 (La. 1997); *Lacey v. La. Coca-Cola Bottling Co.*, 452 So. 2d 162, 164 (La. 1984).

In this case, the plaintiffs' evidence is insufficient to survive summary judgment because no reasonable jury could conclude that it was more likely than not that a Delta employee's actions caused the fire.  The evidence does not exclude with a fair amount of certainty several other reasonable possibilities: that a Coca-Cola employee, Wederstrandt, or one of Wederstrandt's employees plugged the Pepsi cooler into an extension cord.

First, the plaintiffs do not exclude with a fair amount of certainty the reasonable possibility that Wederstrandt or one of his employees plugged the Pepsi cooler into an extension cord.  This could have happened at any point during the two years between 2004, when the Pepsi cooler that caught fire was installed, and 2006, when the fire occurred.  The plaintiffs' own experts testified that they saw extension cords being used in several places

5

throughout Brian's Superette, and Wederstrandt admitted in his deposition that at one point he plugged a cappuccino machine into an extension cord.

Wederstrandt asserts in an affidavit, without corroborating evidence, that neither he nor his employees plugged the Pepsi cooler into an extension cord. However, for the purposes of summary judgment, these assertions are insufficient to constitute evidence that would exclude with a fair amount of certainty the reasonable possibility that he or someone other than a Delta employee may have plugged the Pepsi cooler into an extension cord. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) ("[The non-moving party's] attempt to create a fact issue as to [an element of the relevant statute] by relying on a conclusory and self-serving affidavit is on unsteady ground."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) ("[S]elf-serving allegations [in an affidavit by a party] are not the type of significant probative evidence required to defeat summary judgment." (internal quotation marks and citation omitted)); *Granger v. Guillory*, 819 So. 2d 477, 481 (La. Ct. App. 2002) ("We only have the Defendant's speculation that someone else must have done the nefarious deed, since he did not.").

Moreover, because it would be impossible for Wederstrandt to have personal knowledge of all the actions of each of his employees in the store over that two-year period, his assertion that none of them plugged the Pepsi cooler into an extension cord does not constitute evidence sufficient to survive a motion for summary judgment under the circumstances. *See Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (holding that affidavits offered by a nonmoving party could not be considered at summary judgment because they were not based on personal knowledge); Fed R. Civ. P. 56(e)(1) (requiring that affidavits submitted to support or oppose a summary judgment motion "must be made on personal knowledge").

No. 08-31237

Even if we were to credit Wederstrandt's affidavit testimony as to his actions and those of his employees, the plaintiffs' evidence still would not exclude with a fair amount of certainty yet another reasonable possibility: that a Coca-Cola employee could have plugged the Pepsi cooler into an extension cord.  One reasonable scenario is that when Coca-Cola installed its smaller cooler in July 2005 —  the last time before the fire when a cooler was installed along the wall — the addition of the small cooler caused an overloaded circuit breaker to trip, and that a Coca-Cola employee remedied that problem by attaching one of the Pepsi coolers already installed along the wall to an extension cord.

The plaintiffs' contention is that the circumstantial evidence shows that a Delta employee must have plugged the Pepsi cooler into an extension cord when installing it in 2004.  They claim that the configuration of the electrical circuitry in the store was such that all the electrical outlets on the wall behind the coolers were connected to a single electrical circuit.  They also claim that the circuit lacked the capacity to power the remaining Coca-Cola cooler as well as the two new Pepsi coolers installed in 2004, and therefore, the installation of the two Pepsi coolers should have resulted in the circuit breaker tripping.  The fact that the circuit breaker did *not* trip when Delta installed the two Pepsi coolers along the wall in 2004, the plaintiffs argue, means that a Delta employee must have plugged one of the Pepsi coolers into an extension cord, which presumably led to an outlet that was on a different circuit.

This theory is speculative, at best, even assuming that the plaintiffs have demonstrated a genuine issue of material fact regarding the configuration of the electric circuitry in the store.[2]  The extended time

---

[2] The magistrate judge found that the plaintiffs had not put forth evidence creating a genuine issue of material fact as to the configuration of the store's electrical circuitry.  The

7

between the installation of the Pepsi coolers and the fire makes the plaintiffs' argument tenuous.  Delta installed the Pepsi coolers in 2004, and the fire did not happen until 2006, so under the plaintiffs' theory, the Pepsi cooler would have been plugged into an extension cord for approximately two years without catching fire.  Moreover, the circuit breaker could easily have tripped at any time during those two years, and it is reasonably possible that Wederstrandt or one of his employees remedied that problem by plugging the Pepsi cooler into an extension cord.  A Delta employee did fix a problem with a switch on a Pepsi cooler in January 2005, but the plaintiffs do not contend that anything was changed about how the cooler was plugged into the electrical circuitry in the store.  Even if anything was changed at that time, the repair took place over a year before the fire.

Thus, the evidence put forward by the plaintiffs, even when construed in the light most favorable to them, does not exclude with a fair amount of certainty several other reasonable possibilities, under which someone other than a Delta employee plugged the Pepsi cooler into an extension cord.  The evidence does not exclude with a fair amount of certainty the reasonable possibilities that during the approximately two-year period between the installation of the Pepsi coolers and the fire, Wederstrandt, one of his employees, or a Coca-Cola employee plugged the Pepsi cooler into an extension cord.

The other two arguments that the plaintiffs make are also unpersuasive.  One of the plaintiffs' theories is that Delta negligently caused too many coolers to be plugged into the single electric circuit in the wall behind the coolers, thereby tripping the circuit breaker and making it

---

plaintiffs contest this conclusion on appeal, but we decline to resolve this issue and instead assume arguendo that they have created a genuine issue of material fact regarding the circuitry.

necessary for someone, regardless of who, to plug the Pepsi cooler into an extension cord.   The first difficulty with this theory is that it posits that someone made an independent decision to plug the cooler into an extension cord.  The decision to do that, rather than to solve the problem in another way (such as by moving a cooler), would be the real cause of the fire if the plaintiffs are right in supposing that this is what happened.  Furthermore, even assuming that the actions of whoever actually plugged the Pepsi cooler into an extension cord were not the superseding cause of the fire, and that the electrical circuitry in the store was laid out as the plaintiffs claim, this argument nonetheless fails.  The plaintiffs have not excluded with a fair amount of certainty the reasonable possibility that someone other than a Delta employee overloaded the circuit, causing the circuit breaker to trip.  It is just as probable that a Coca-Cola employee overloaded the circuit and caused the circuit breaker to trip, since Coca-Cola was the last company to install a cooler before the fire: the small cooler, in July 2005.  Alternatively, Wederstrandt or one of his employees could have overloaded the circuit and caused the circuit breaker to trip while installing or moving other appliances around the store.

Finally, the plaintiffs argue that even if Wederstrandt or one of his employees was the person who plugged the Pepsi cooler into an extension cord, then Delta is nonetheless liable for failing to warn them not to do that. Assuming that Delta had a duty to warn Wederstrandt (and thus his employees),[3] and that Delta breached that duty, this argument also fails.  As explained above, even when viewing the evidence in the light most favorable

---

[3] "A seller is required to give reasonable warnings about dangers of which he has knowledge or should have had knowledge." *Hesse v. Champ Serv. Line*, 758 So. 2d 245, 249 (La. Ct. App. 2000) (quoting *Toups v. Sears, Roebuck & Co.*, 507 So. 2d 809, 817 (La. 1987)). Although Delta did not actually sell the Pepsi coolers to the store, we assume for the sake of argument that Delta's duty to warn was the same as that of a seller.

to the plaintiffs, they have not excluded with a fair amount of certainty the reasonable possibility that a Coca-Cola employee plugged the Pepsi cooler into an extension cord.  Delta had no duty to warn a Coca-Cola employee, whose company was, like Delta, also selling soft drinks in the store.  Under this reasonable scenario, Delta's supposed failure to warn would not have any causal connection to the fire.  Accordingly, the plaintiffs have not shown that a reasonable jury could find that Delta's alleged breach of its duty to warn was more likely than not the cause of the fire.

In sum, we conclude that (1) all of the plaintiffs' theories of liability are speculative and based on circumstantial evidence, and accordingly the plaintiffs are required to exclude with a fair amount of certainty all reasonable hypotheses under which someone other than a Delta employee caused the fire; and (2) given the paucity of evidence regarding who plugged the Pepsi cooler into an extension cord, even when the evidence is viewed in the light most favorable to the plaintiffs, the plaintiffs do not exclude with a fair amount of certainty several other reasonable hypotheses, under which the actions of someone other than a Delta employee caused the fire.  Thus, we AFFIRM the district court's grant of summary judgment in favor of Delta.