Judgment rendered September 23, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,572-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BEVERLY GARLAND                                Plaintiff-Appellant

versus

BEAUBOUEF COMPANY,                             Defendant-Appellees
L.L.C., AND REPUBLIC FIRE
AND CASUALTY INSURANCE
COMPANY

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 79,212

Honorable Charles B. Adams, Judge

* * * * *

DUDLEY DEBOSIER INJURY LAWYERS        Counsel for Appellant
By:  Kristen B. Bernard
     G. Adam Savoie
     W. Paul Wilkins

PETTIETTE, ARMAND, DUNKELMAN          Counsel for Appellees
WOODLEY, BYRD & CROMWELL, LLP
By:  S. Michael Cooper
     Chelsey T. Colontonio

* * * * *

Before MOORE, PITMAN, and COX, JJ.

**MOORE, J.**

Beverly Garland appeals a judgment that granted summary judgment in favor of Beaubouef Co. LLC and its insurer, Republic Fire & Casualty, dismissing her claims against them, and denied as moot her motion for partial summary judgment on the issue of liability. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

Shortly before 3:00 am on Easter Sunday, April 16, 2017, Ms. Garland was driving south on I-49 in DeSoto Parish. Unfortunately, a black cow had escaped from a cattle farm to the west of the Interstate, just north of where it crosses under La. Hwy. 5 (not a freeway exit). Unable to see the cow in the pitch darkness, she drove straight into it, sustaining serious injuries. The cow had escaped through a hole in the fence of a pasture owned by Beaubouef. Beaubouef's insurance adjuster denied her claim, and Ms. Garland filed this suit alleging that Beaubouef was not free from negligence.

Beaubouef admitted that it owned the cow, but showed that two days before the accident, thieves had cut through the enclosing fence to steal copper from a cell tower located on the pasture, leaving a breach through which the animal escaped. The DeSoto Parish Sheriff's Office ("DPSO") had investigated the break-in, and notified Crown Castle, Beaubouef's lessee, and AT&T, the sublessee, but no one had ever notified Beaubouef about it. Within 48 hours of the theft, the cow got out and roamed onto the Interstate. Beaubouef alleged that DPSO, Crown Castle, AT&T, La. DOTD, the unknown thieves, and Ms. Garland were comparatively at fault.

## MOTIONS FOR SUMMARY JUDGMENT

Ms. Garland filed a motion for partial summary judgment urging that Beaubouef alone was liable for the accident, as Beaubouef breached its duty to keep its fence in good condition. In support, she offered five depositions, or portions thereof:

Joe Beaubouef, the LLC's principal, testified that his property was fenced in "hog wire," which was "made of steel" and was "tough," and no cow had ever escaped it before; he agreed it was his duty to maintain the fence. Two days after Ms. Garland's accident, an agent from the Livestock Brand Commission told him that on Good Friday morning, somebody broke into the cell tower to steal copper, and cut the fence, but that was the first time he (Beaubouef) ever heard of it.

Joe Clark, Beaubouef's assistant farm manager, testified that every morning when they go to feed the cattle, they "check" the fences; if they find a problem, they fix it on the spot. Joe carefully described the cell-tower tract as a triangle-shaped overflow pasture, fenced on all three sides; they used it only when the regular pastures were low on grass, and then, never more than eight days at a time. Joe testified he did not let the cows on the triangle pasture before the accident, but maybe his brother did.

Bobby Clark, the farm manager and Joe's brother, admitted they had let cows into the triangle pasture because they needed more grass. In response to a question, he agreed that he "inspects" the fence every other day, and it was fine before he let the cows on the triangle pasture; however, he could not precisely recall when he did this.

Rose Clark, Bobby's wife, stated that the hole in the fence was big enough to drive a four-wheeler through, and Trooper Monroe, of DPSO, testified that the cow belonged to Beaubouef.

Beaubouef then filed its own motion for summary judgment, arguing that it maintained a perfectly good fence around the triangle pasture; early on April 14, unknown thieves cut the fence, entered, and stole copper from the cell tower; AT&T promptly advised Crown Castle and DPSO about the breach, but nobody ever advised Beaubouef; by the time Beaubouef found out, it was too late. In support, Beaubouef offered the same depositions as Ms. Garland, plus two partial depositions:

Randy Stinson, an AT&T lineman, testified that he got the service ticket from AT&T on April 14, to respond to a copper theft. Finally, George Drake, another technician,[1] testified that vandals cut a six-foot portion of the lighting cables, which he never reported to Beaubouef.

## RULING OF THE DISTRICT COURT

The district court wrote a well-researched, eight-page opinion. It noted at the outset that the depositions of Beaubouef's employees were "inconsistent," in that Joe said they would check the perimeter fence every day, if cows were being kept in the triangle, while Bobby said they inspected the fence by four-wheeler every other day.

The plaintiff was required to show (1) ownership of the cattle, (2) the highway was one enumerated as a "stock law" highway, and (3) the presence of cattle on the highway. With this showing the burden shifted to the defendant to show an independent cause of the harm, such as (1) fortuitous

---

[1] The partial deposition does not show Drake's precise connection with the case; at oral argument, counsel said he worked for either AT&T or Crown Castle.

3

event, (2) actions of a third party, over which the owner had no control, or (3) plaintiff fault. La. C.C. art. 2321; La. R.S. 32:263; *Chaney v. Vaughn*, 51,795 (La. App. 2 Cir. 2/28/18), 245 So. 3d 1208. Further, the owner must (1) show that he took all reasonable and prudent measures and precautions to enclose his livestock and (2) explain the presence of the animal on the highway by showing when, where, and how the animal escaped, *i.e.*, "complete freedom from fault." *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764.

The court found Ms. Garland made her prima facie showing. However, Beaubouef owed "no obligation of repeated inspection of fence rows when two days have elapsed" between a repair and an escape, *Cornish v. Ford, Bacon & Davis*, 304 So. 2d 361 (La. App. 1 Cir.), *writ ref'd*, 305 So. 2d 123 (1974). In fact, an inspection "once a week" is "reasonable and prudent," *Womack v. Rhymes*, 300 So. 2d 226 (La. App. 2 Cir.), *writ ref'd*, 303 So. 2d 179 (1974), and an inspection "before moving the animals into the enclosure" is reasonably prudent, *Arvie v. State Farm*, 2013-1096 (La. App. 3 Cir. 3/26/14), 135 So. 3d 837.

Despite the minor inconsistency between Joe and Bobby Clark's testimonies, the court found that these witnesses established reasonable and prudent measures to enclose their livestock. Even accepting Joe's comment that he "checked" the fences each morning, the court found that a company policy directing more frequent inspections does not supplant the standard of conduct required under a legal duty, citing *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289 (La. 1993).

Finally, the court found that the vandalism to the fence, over which Beaubouef had no control, supplied the "when, where, and how" of the

4

cow's presence on the Interstate, and was the sole cause of Ms. Garland's damages. The court therefore granted summary judgment in favor of Beaubouef, and denied Ms. Garland's motion as moot.

Ms. Garland has appealed, raising two assignments of error.

## APPLICABLE LAW

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief sought by a litigant. *Murphy v. Savannah*, 18-0991 (La. 5/8/19), 282 So. 3d 1034. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of civil actions (except for certain domestic matters) and is favored in our law. La. C.C.P. art. 966 A(2); *Murphy v. Savannah*, *supra*. A court must grant a motion for summary judgment if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3); *Murphy v. Savannah*, *supra*. The question whether a legal duty is owed may be decided by summary judgment. *Allen v. Lockwood*, 14-1724 (La. 2/13/15), 156 So. 3d 650; *Passon v. Fields*, 50,635 (La. App. 2 Cir. 5/18/16), 196 So. 3d 645.

No person owning livestock, or having it under his care and control, shall knowingly, willfully, or negligently permit such livestock to go upon any Louisiana Interstate highway. La. R.S. 32:263 A; *Schysm v. Boyd*, 45,336 (La. App. 2 Cir. 8/16/10), 47 So. 3d 977, *writ denied*, 10-2113 (La. 11/19/10), 49 So. 3d 390.

The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that

5

he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. La. C.C. art. 2321; *Honeycutt v. State Farm*, 39,301 (La. App. 2 Cir. 12/22/04), 890 So. 2d 756, *writ denied*, 05-1046 (La. 3/24/05), 896 So. 2d 1046.

Under these statutes, when an automobile strikes a horse or cow on a stock law highway, the burden of proof rests with the owner of the animal to exculpate himself from even the slightest degree of negligence. *Hines v. Garrett*, *supra*; *Chaney v. Vaughn*, *supra*. The courts deem this a presumption of negligence; to rebut it, the owner must show not only "that he has taken all reasonable and prudent measures and precautions to enclose his livestock, but must also explain the presence of the animal on the highway by showing when, where, and how the animal escaped from its enclosure, that is, his complete freedom from fault." *Hines v. Garrett*, *supra*; *Chaney v. Vaughn*, *supra*; *Arvie v. State Farm*, *supra*.

## DISCUSSION

By her first assignment of error, Ms. Garland urges the district court erred in not finding Beaubouef at fault under Art. 2321. She concedes that liability under this article has always been subject to a requirement of knowledge, *Kennedy v. Frierson*, 142 So. 2d 838 (La. App. 2 Cir. 1962); *Melancon v. Perkins Rowe Assocs.*, 2016-0219 (La. App. 1 Cir. 12/14/16), 208 So. 3d 925. She shows that the owner must take reasonable measures to prevent the escape of cattle, *Cornish v. Ford, Bacon & Davis*, *supra*. She contends that Beaubouef's employees had a duty to inspect the fence at least once after the theft occurred on Friday morning; had they done so, following

6

the procedure outlined by Joe Clark, they would have uncovered the breach on Friday and prevented the accident on Sunday. Their failure to do so, she submits, proves a "slight showing of negligence," the standard enunciated in *Thomas v. Wright*, 75 So. 2d 559 (La. App. 2 Cir. 1954), is equivalent to the finding of no "proper fencing," in *Chaney v. Vaughn*, *supra*, and warrants a finding of liability. At oral argument, counsel further suggested that the existence of a duty, being a mixed question of fact and law, is simply not suitable for resolution by summary judgment.

Mr. Beaubouef stated that the enclosing fence was hog wire, made of steel, "tough," and no cow had ever escaped it; Bobby Clark called it barbwire; neither he nor his brother noticed anything wrong with the fence the last time they saw it before the accident. In short, there is not one scintilla of evidence that this fence was defective, inadequate, or poorly maintained, as was shown in cases like *Kennedy v. Frierson*, *supra*; *Chaney v. Vaughn*, *supra*; *Womack v. Rhymes*, *supra*; *Quarles v. Tolar*, 312 So. 2d 350 (La. App. 2 Cir. 1975); *Jamison v. Williamson*, 174 So. 2d 285 (La. App. 2 Cir. 1965); or *Stinson v. Robinson*, 68 So. 2d 806 (La. App. 2 Cir. 1953). On de novo review, we find no genuine issue of material fact that the fence surrounding the triangle pasture satisfied "all reasonable and prudent measures and precautions to enclose" Beaubouef's livestock, *Hines v. Garrett*, *supra*. We also find that the singular and unforeseeable copper theft, with the thieves cutting a gaping hole in the fence, conclusively provides the "when, where, and how" the cow escaped, *Hines v. Garrett*, *supra*.

The issue then becomes whether Beaubouef owed a duty to conduct more frequent inspections of its fence. Obviously, a daily inspection would

have uncovered the breach, the Clarks would have repaired it, and the cow would not have strayed onto the Interstate and into Ms. Garland's path. However, nothing in Louisiana's jurisprudence imposes a duty on livestock owners to inspect all their fences every day. This court has previously found that a once-a-week inspection is reasonable and prudent, *Womack v. Rhymes*, *supra*; another court has found that inspection is required before moving cattle into an enclosure, *Arvie v. State Farm*, *supra*; yet another court has held that after repairing a damaged fence, the owner has no obligation of repeated inspection, *Cornish v. Ford, Bacon & Davis*, *supra*. Joe Clark stated that they worked five days a week, but not on weekends; he said they checked fences daily, but did not recall letting the cows into the triangle pasture before this accident, so he would not have needed to inspect the fence. Bobby Clark established that before he let the cows in, the fence was okay. On de novo review, we find no genuine issue of material fact that Beaubouef satisfied the duty of adequately inspecting its fences.

Finally, we note that whether a legal duty is owed can be decided on summary judgment. *Allen v. Lockwood*, *supra*; *Passon v. Fields*, *supra*. Duty is a question of law; the inquiry is whether the plaintiff has any law – statutory, jurisprudential, or arising from general principles of fault – to support his claim. *Hebert v. Rapides Parish Police Jury*, 06-2001 (La. 4/11/07), 974 So. 2d 635; *Faucheaux v. Terrebonne Consol. Gov't*, *supra*; *England v. Fifth La. Levee Dist.*, 49,795 (La. App. 2 Cir. 6/3/15), 167 So. 3d 1105. Some cases have imposed, or considered imposing, a heightened duty to protect plaintiffs against the criminal conduct of third persons, but this is premised on a significant showing of prior criminal conduct. *Harris v. Pizza Hut of La.*, 455 So. 2d 1364 (La. 1984) (finding a heightened duty); *Mundy*

8

*v. Department of Health & Human Res.*, 620 So. 2d 811 (La. 1993) (finding no heightened duty). On de novo review, we find nothing in this record that would create a heightened duty for Beaubouef to inspect his fences every day. The district court did not err in granting Beaubouef's motion for summary judgment.

By her second assignment, Ms. Garland urges the district court erred in denying her motion for summary judgment. She argues that the defendant always has the burden of proving comparative fault, *Pruitt v. Nale*, 45,483 (La. App. 2 Cir. 8/11/10), 46 So. 3d 780; *Watson v. Brazeel*, 36,499 (La. App. 2 Cir. 12/18/02), 833 So. 2d 1267, *writ denied*, 03-0217 (La. 4/4/03), 840 So. 2d 1215. She submits that Beaubouef offered no evidence whatsoever of plaintiff or third-party fault. In light of our finding that Beaubouef satisfied its duty of reasonably and prudently enclosing its cattle, and of adequately inspecting its fences, there is no merit to this assignment. We would also note that Beaubouef produced compelling evidence that copper thieves caused the breach in the fence, thus excluding any genuine issue as to third-party fault.

## CONCLUSION

For the reasons expressed, we affirm the summary judgment in favor of Beaubouef Co. LLC and the denial of Ms. Garland's motion for partial summary judgment. All costs are to be paid by Ms. Garland.

**AFFIRMED**.